493 So.2d 800 (1986)
Emma GERMANY, Plaintiff-Appellant,
v.
STATE of Louisiana, Through OFFICE OF the SECRETARY, DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Defendant-Appellee.
No. 17,930-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Writ Denied November 7, 1986.
*801 Culpepper, Teat, Caldwell & Avery, by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Dept. of Health & Human Resources, Office of Gen. Counsel by Jerry H. Bankston, Baton Rouge, for defendant-appellee.
Before HALL, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
Petitioner seeks judicial review of adverse rulings in her efforts to obtain aid to families with dependent children and for non-public assistance food stamps. Plaintiff-appellant, Emma Germany, was receiving such financial assistance when her benefits were terminated by the Claiborne Parish office of defendant-appellee, State Department of Health & Human Resources, Office of Family Security. The regional office and the appeals section of the Office of the Secretary, Department of Health and Human Resources both denied her claim for reinstatement of benefits. The district court affirmed the decision of the appeals section and denied plaintiff's claim for relief. We reverse.
The record reveals that the plaintiff had been receiving aid to families with dependent children and non-public assistance food stamps on behalf of herself and her minor daughter through the Claiborne Parish office of the State Department of Health and Human Resources, Office of Family Security. Her continued eligibility for such benefits was reviewed annually and her annual recertification date was October 3, 1984. On this date, plaintiff came to the Claiborne Parish office for her redetermination interview. At that time, plaintiff related that she was residing with some friends in Homer, Louisiana.
Later that same day, the Claiborne Parish office received a phone call from a man who claimed to be plaintiff's cousin. He stated that the plaintiff was living with one Mr. Milton Mosby at 1418 Pearl Street in Homer.
The Claiborne Parish office investigated this information and reached the conclusion that plaintiff was indeed residing with Mr. Mosby as reported. The Claiborne Parish office advised plaintiff that she would have to report Mr. Mosby's earnings, since she and her daughter were residing in the same household as Mr. Mosby, in order to redetermine her eligibility for continued financial assistance. The plaintiff did not respond to the office's request and her financial aid and food stamps were terminated.
The plaintiff appealed the termination of her benefits to the appeals section of the State Department of Health and Human Resources, Office of Family Security, and a hearing was conducted before a hearing officer on January 22, 1985. The hearing officer concluded that based on the information presented, it was established that plaintiff and her daughter were residing with Mr. Milton Mosby in November, 1984, and that the agency had requested certain information on Mr. Mosby which the plaintiff *802 refused to provide. The hearing officer concluded that the agency decision to terminate plaintiff's aid was correct and affirmed the termination of benefits.
Plaintiff then filed a petition for judicial review of the appeals section's decision, pursuant to LSA-R.S. 46:107(D). In a judgment rendered without written reasons, the trial court found in favor of the defendant and dismissed plaintiff's suit at her cost. From this judgment, plaintiff appeals.
On appeal, plaintiff contends that the findings of fact by the appeals referee are not supported by sufficiently competent evidence and that the trial court erred in failing to reverse the decision of the appeals section and grant unto plaintiff financial aid to families with dependent children and non-public food stamps.
After hearing the evidence presented, the hearing officer drew the following conclusions in denying plaintiff's claim:
Based on information presented at the fair hearing it is determined that Ms. Germany and her daughter, Treshunda Taylor, were residing with Mr. Milton Mosby in November 1984 when the agency requested information on Mr. Mosby. The agency was correct in their decision to close the AFDC and food stamp cases on the basis that the claimant refused to cooperate.
Cooperation includes a recipient's accurate disclosure of her living arrangement; therefore, Ms. Germany's refusal to provide information to the agency regarding Mr. Mosby so that they could determine how his being a household member affected the AFDC and food stamp certifications was refusal to cooperate.
Strong evidence was presented to show that Mr. Mosby was living with Ms. Germany at 100 Circle Drive, # 24, when she was evicted in late April 1984. Mrs. Ruth Smith, Apartment Manager, testified that she made a thorough investigation before having Ms. Germany evicted on the grounds that Mr. Mosby was an undeclared household member. Ms. Germany's lawsuit over the matter was decided in favor of the apartment management.
Several agencies, including the schools Treshunda Taylor has attended and Mr. William Thomas' business, shows 1418 Pearl Street as Ms. Germany's address, and Mr. Mosby's telephone number as her telephone number. It would be illogical to conclude that these unrelated agencies would have recorded such information without obtaining it from Ms. Germany.
Treshunda Taylor rode the same school bus (driven by Mrs. Minerva Brooks) regularly from the time school started in August 1984 through November 1984. There is no proof that Mrs. Brooks' records of the exact number of days Treshunda rode her bus is accurate; however, Mrs. Brooks was aware of Treshunda when contacted by Mrs. Pace, and knew Treshunda got on and off her bus in the 1400 block of Pearl Street. The following day Mrs. Brooks observed the exact address of the residence from where Treshunda was catching the bus 1418 Pearl Street.
Mrs. Jennie Burks' written statements are of little value since they are contradictory.
Mr. Banks testified that as far as he knows Mr. Mosby has nobody living with him at 1418 Pearl Street. However, the preponderance of the evidence indicates that Ms. Germany and her daughter, Treshunda, were living at 1418 Pearl Street in November 1984.
It is clear that the agency spent a great deal of time and effort in the investigation of this cause. While it is apparent that any number of administrative records from a number of sources were checked, most of these were not introduced. Agency investigators merely testified to the contents of the records which they had reviewed. However, applications by Ms. Germany's daughter for free lunches at her school were introduced to show that the address listed on those applications was that of Mr. Mosby. Also, an administrator from that *803 school testified concerning this line of inquiry. However, the record establishes that this evidence relates to the period between 1981 and 1983, a period of time substantially before that in question here.
Three witnesses were called to testify concerning the service of legal process on Ms. Germany shortly before the recertification at issue. The obvious purpose was to show that service was made on the claimant at Mr. Mosby's residence. Testimony was received from the merchant making the claim, the justice of the peace whose court was involved, and the officer serving the papers. The testimony of the justice of the peace was not helpful. He was only aware of information contained in his records which had been given him by the plaintiff-merchant and the officer serving the papers. Likewise, the merchant's information was not helpful. His knowledge was obtained from his credit application which had been filled out at a point in time significantly prior to that at issue here. After considerable confusion, the officer serving the papers conceded that he had not served the papers in question on Ms. Germany at Mr. Mosby's residence as alleged.
The only other outside witness testifying for the agency was Mrs. Smith, who managed an apartment complex from which Ms. Germany was evicted in April of 1984. This evidence was sufficient to show that Mr. Mosby was living with Ms. Germany in April of 1984.
An agency investigator testified that a school bus driver, Mrs. Brooks, who was unable to attend the hearing, told her that during the period in time in question, the fall of 1984, that she regularly picked up and discharged Ms. Germany's daughter near Mr. Mosby's house on Pearl Street. On the other hand, Ms. Germany explained at the hearing that the reason the child used the bus in this vicinity was because she had a friend who lived nearby.
The agency investigator also testified that she spoke with a number of people who lived in the block where Jennie Burks resided. Ms. Burks and Barbara Morris were two people whom Ms. Germany reported she was living with on the recertification application at issue. The investigator stated that all of those persons interviewed said that there were no "non-family" people living in the Burks household. She also reported that three persons in the block where Barbara Morris lived stated essentially the same thing with respect to Ms. Morris' home. The investigator further reported that Jennie Burks signed statements relating that Ms. Germany and her daughter did not live with her but that they had stayed at her home as often as one to two nights a week. The names of the persons with whom the investigator talked in the Burks and Morris neighborhoods were not given.
Thus there was direct evidence showing that Ms. Germany and Mr. Mosby were living together in April of 1984 when Ms. Germany was evicted, which was approximately six months prior to the time in question, October, 1984. Additionally, there are records, direct testimony and hearsay evidence strongly indicating that Ms. Germany and Mr. Mosby lived together at a time prior to her eviction. The evidence with respect to the service of the legal demands is not helpful. There is also hearsay testimony that a school bus driver deposited Ms. Germany's daughter at or near Mr. Mosby's address. There is other minor hearsay evidence reflecting phone numbers and postal addresses given to various agencies. These are not conclusive and generally relate, like most of the evidence, to a period of time prior to that at issue.
Therefore, the only significant evidence presented at the hearing that tended to show that Ms. Germany was living with Mr. Mosby during the period in question was obtained from the school bus driver who did not testify.
The first question for determination is the admissibility of the predominately hearsay evidence in this cause. LSA-R.S. 46:107 B establishes general procedures for DHHR hearings. This statute, which deals with evidentiary rules only in a general *804 nature, simply provides that the hearings are to be conducted in accordance with appropriate regulations "whether or not such regulations conform to the usual rules of evidence and other technical rules of procedures."
While we were unable to locate interpretive jurisprudence, it should be noted that this provision is similar to LSA-R.S. 23:1631, the statute dealing with hearings in unemployment compensation cases.
Wilkerson v. State, Office of Employment Security, 439 So.2d 506 (La.App. 1st Cir.1983), succinctly summarizes the evidentiary rules applicable to unemployment compensation hearings, particularly those pertaining to hearsay.
The usual rules of evidence need not apply to an administrative hearing and therefore hearsay is admissible. LSA-R.S. 23:1631; Hall v. Doyal, 191 So.2d 349 (La.App. 3d Cir.1966). Nevertheless, the factual findings of an administrative agency must be based on legal and competent evidence. Hearsay is not considered competent evidence and cannot be used in determining whether the findings of a Board of Review are supported by "sufficient evidence" as required by LSA-R.S. 23:1634; Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir.1983).
Therefore, in unemployment compensation hearings at least, hearsay is frowned upon.
However, the Department of Health and Human Resources of the State of Louisiana is clearly covered by the Administrative Procedure Act (APA). LSA-R.S. 49:951(2). The Office of Employment Security is specifically exempted from the provisions of that act. LSA-R.S. 49:967 A.
The APA requires that findings of fact by covered agencies may only be based "on the evidence and on matters officially noticed." LSA-R.S. 49:955 G. "Agencies may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs." R.S. 49:956(1). Thus, the standard of admissibility used in judicial proceedings is not applicable. Indeed, the redactors specifically rejected that rule which was contained in the model act and substituted the provision enunciated. Force and Griffith, The Louisiana Administrative Procedure Act, 42 La.L.Rev. 1227, 1262 (1982).
In discussing the employment security cases as contrasted to the APA, Force and Griffith are critical of the judicially enunciated standards. They point out that a rule which holds that hearsay is admissible but further holds that hearsay may not be relied on in order to reach a decision is contradictory. In discussing the fact that in adopting the APA, the Legislature specifically rejected the standard of admissibility used in judicial proceedings, the authors note that the probable cause was that
the legislature intended to allow agencies to admit and rely on evidence which was compelling or persuasive regardless of whether it would have been admissible or relied upon by a court. The test contained in the LAPA essentially asks whether the evidence which is admitted and relied on by the agency is the kind of evidence in terms of its source, freshness, clarity, consistency, objectivity, etc., that reasonable and prudent people would rely on in conducting their affairs. The world does not function according to the rules of evidence.
Force and Griffith, supra, at pp. 1266, 1267.
We were unable to locate jurisprudence specifically dealing with DHHR hearings. However, in Turner v. State Department of Public Safety, 350 So.2d 984 (La.App. 2d Cir.1977), this Court found hearsay evidence admissible and probative under the APA in a driver's license hearing. In Turner, the plaintiff's driver's license had been suspended after an administrative hearing for failure to consent to a sobriety test. Although the decision below was reversed because the specific requirements of the statute had not been followed, this Court held that the hearsay documents at issue were admissible in this administrative hearing.
*805 In Fisher v. Louisiana State Board of Medical Examiners, 352 So.2d 729 (La. App. 4th Cir.1977), writ refused 353 So.2d 1338 (La.1978), the Fourth Circuit, in the following terms, also determined that the APA permitted consideration of hearsay evidence in an administrative hearing.
Hearsay evidence is admissible in administrative proceedings. The Louisiana Administrative Procedure Act (La.R.S. 49:956) permits admission of any evidence which possesses "probative value commonly accepted by reasonably prudent men in the conduct of their affairs," subject to objections of irrelevancy, immateriality, incompetency, or repetitiousness. Concerned with this aspect of administrative law procedure, Professor Kenneth Davis has observed:
"(T)he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to the most reliable. Therefore the guide should be a judgment about the reliability of particular evidence in a particular circumstance, not the technical hearsay rule with all its complex exceptions." Kenneth Davis, "Hearsay in Administrative Hearings," 32 Geo.Wash.L.Rev. 689 (1964).
The plaintiff In Fisher was challenging the revocation of his medical license. He contended that the consideration of a signed report of a drug enforcement agent who did not testify was error. The Fourth Circuit determined that this hearsay evidence was admissible under the APA. The Court determined that all of the other evidence in the case, including the direct testimony, caused the hearsay evidence to appear to be reliable. The Court therefore affirmed the license revocation.
It is therefore clear from the APA and interpretive jurisprudence that hearsay is admissible in the instant cause in determining the ultimate issue. The question then becomes whether under the aforementioned evidentiary standards this record is sufficient to disqualify the claimant. We are constrained to reverse only when the evidence is "[m]anifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record." LSA-R.S. 49:964 G(6).
In light of the statutory standard of appellate review, we reiterate the evidence in this cause. The hearsay testimony from persons living on the streets of Ms. Burks and Ms. Morris, where Ms. Germany reported she was residing, is particularly unreliable. Not only were those persons not named, Ms. Burks specifically stated that Ms. Germany stayed with her one to two nights a week. This was precisely the position taken by Ms. Germany. As we have already noted, all of the other evidence tends to prove facts occurring substantially in advance of the time in question or does not tend to prove the point assertedsuch as the evidence concerning the service of legal process.
The fact that Ms. Germany and Mr. Mosby had lived together at previous times does not support the determination that they were living together at the time in question, particularly in light of their adament denials.
The only probative evidence, even under the liberal standards of the APA and its interpretive jurisprudence, that Ms. Germany and Mr. Mosby were living together at the time in question are the statements of the bus driver as related by the agency investigator that she regularly picked up and deposited Ms. Germany's child in the vicinity of Mr. Mosby's residence. Even if true, this evidence in our judgment is insufficient to prove the contentions of the agency. There are too many other plausible explanations.
We therefore find that disqualification of the claimant herein is "manifestly erroneous in view of the reliable, probative and substantial evidence."
The judgment appealed from is reversed and it is now ordered, adjudged and decreed that the appeals section of the Office of the Secretary, Department of Health and Human Resources, State of Louisiana, issue an order directing the payment to *806 plaintiff of the financial family assistance and food stamps to which she is entitled during the certification period in question under the Louisiana Public Welfare and Assistance Law. The costs of this appeal are assessed against the State of Louisiana through the Department of Health and Human Resources insofar as such costs may be legally taxed against the state.
Reversed and rendered.