ROSEMARY LEDET, Judge.
11 This is a City of New Orleans code enforcement proceeding. The City commenced this proceeding against DMK Acquisitions & Properties, L.L.C. (“DMK”) as the owner of commercial property located at 1532 Robert E. Lee Boulevard in New Orleans (the “Property”). The City alleged that DMK was in violation of its municipal ordinances prohibiting public nuisance and blighted property. The City’s administrative hearing officer *1159 (“HO”) found DMK guilty of the charged violations and imposed various fines. The Civil - District Court ( CDC ), functioning as an appellate court, affirmed the HO’s judgment. For the reasons that follow, we likewise affirm the HO’s judgment.
FACTUAL AND LEGAL BACKGROUND
As a result of Hurricane Katrina, which made landfall in the New Orleans area on August 29, 2005, the Property, which was the former location of the Lake Terrace Shopping Center (a strip mall), sustained extensive damage. On April 24, 2007, DMK purchased the Property for $1.85 million. At the time of the purchase, the hurricane damage to the Property had not been repaired. In January 2009, the 12City awarded DMK an Economic Development Fund grant totaling $250,000, which was intended to help bring the Property back into commerce. As of the date of the administrative hearing (June 7, 2012), the City had paid DMK $225,000 of the grant money; nonetheless, the Property remained unoccupied and in a state of disrepair.
On October 13, 2011, the City’s inspector conducted an initial inspection of the Property. According to the inspector’s initial report, the alleged violation was that the Property was unoccupied. The scheduling comments and complaint description read: “vacant lot, high grass and weeds covering the sidewalk, rodents.” The report indicated that the Property failed the inspection because the siding was missing and the structure was deteriorated. The Property additionally was cited for no work in progress.[1]
On May 3, 2012, a notice of hearing was issued to DMK as owner of the Property. The notice informed DMK of the alleged violations of the municipal code ordinances prohibiting public nuisance and blighted property — Section 28-37 public nuisance and Section 28-38 blighted property — and of the hearing scheduled for June 7, 2012, to determine whether it was guilty of violating the cited ordinances.
On the day of the hearing, the City inspector returned to the Property and conducted a re-inspection before the hearing commenced. In the re-inspection report, the inspector indicated that the Property failed the re-inspection for multiple treasons, which were listed as follows: (i) fascia boards and soffit were deteriorated, loose, and missing; (ii) the roof and the structure itself were deteriorated; and (iii) the studs were, deteriorated and exposed. The report also indicated that since the initial inspection the building on the Property had been fenced off. The Property again was cited for having no work in progress.[2]
At the June 7, 2012 administrative hearing, DMK was represented by two attorneys and its director, Kenneth Charity. The City was represented at the hearing by Jeremy Stevens, a non-attorney, who introduced himself at the hearing as a representative of the City’s Code Enforcement Department. Mr. Stevens requested to introduce into the record the City’s entire file on this matter, including the photographs attached to each of the inspector’s reports. DMK’s sole objection to the introduction of the file was that one of the photographs should be excluded because it showed debris outside the fence that surrounded the Property. With the exception of that photograph, the HO al *1160 lowed the City’s entire file to be introduced.
Several members of the community appeared at the hearing to voice their concerns regarding the condition of the Property. Six individuals, who each were required by the HO to identify themselves by name and position, spoke in opposition to DMK at the hearing. Briefly, the testimony of those six individuals is summarized below:
1. Jamie White — Vice-President of Lake Terrace Gardens, L.L.C., and on-site property manager. Ms. White stated that she has over three hundred presidents who have voiced their concerns regarding the Property to her. She noted the Property has been vacant and that she has seen people going in and out the Property even though it has been fenced off. She introduced photographs she took the day before the hearing when DMK was trying to clean up the Property. She further noted that there are doors missing from the back of the structure and that the no trespassing signs on the Property are not clearly marked. She still further noted that current residents are worried about the Property and that prospective tenants come in on a daily basis and express concerns about living next to the Property because it is not maintained.
2. Karen Parsons — President of Oak Park Civic Association, a large neighborhood association. Ms. Parsons stated that she lived within five blocks of the Property. She introduced photographs reflecting tall grass on the Property and a telephone pole leaning over the sidewalk in front of the Property. The HO noted that these photographs showed the Property in a “less appropriate condition.” She noted that in 2008 there was a theft of copper from the Property that resulted in water running out of the structure on the Property. Although she immediately reported this to Mr. Charity, it took six to eight months before he had it repaired. She further noted that there were piles of leaves on the Property and that graffiti repeatedly appeared on the structure. She additionally noted that Mr. Charity received economic development funds from the City, yet he failed to maintain the Property.
3. Barbara Lacen Keller — Councilwoman-at-large Stacy Head’s representative. Ms. Keller stated that she visited the Property with Ms. Head. She further stated that Ms. Head’s opinion regarding the Property was that it “is extremely blighted” and “reducing the quality of life in the area and violates the law.” She also stated that Ms. Head wanted the administration to “do the right thing and issue judgment” finding the Property blighted.
4. Dalton Savwoir, Jr. — President of Gentilly Civic Improvement Association (“GO”), a coalition of twenty-one different neighborhood associations in the Gentilly area. He stated that the GCI wanted a “guilty judgment” against DMK. He further stated that DMK has owned the Property since 2007, which was more than enough time to show positive movement. He expressed disagreement with granting DMK’s request for an additional three months and stated that this would not benefit the community.
5. Scott Roger Wheaton, Jr. — appeared on behalf of the Lake Terrace Neighborhood Association. He *1161 stated that the distressing fact about this Property was that when DMK acquired it in April 2007 it was in better condition than it was in June 2012 at the time of the hearing. He explained that in June 2007, Mr. Charity tore all the bricks off the building, but nothing has been done since that time. He further explained that “[i]t’s not a question of bad siding,” but rather of “[n]o siding.” He pointed out that it was error to state that the blight hearings regarding the |5Propert,y started in 2011; rather, he stated that the blight hearings regarding the Property started in 2010. He indicated that the community was “fed up.”
6. Timothy Branaman — a community member who represented that he had over ten years of construction work experience. He questioned the credentials of DMK’s engineer.[3] He opined that the structure on the Property lacked any diagonal support. He explained that three of the sides of the structure were open and that there was only one brick wall. He further stated that the track record of DMK has been to request that the community continue to wait a few, more months until it gets more money.
The HO also allowed the members of the community to introduce two written statements into the record at the hearing. First, the HO allowed Ms. Parsons to read into the record a written statement by GiGi Burk, the chair of the Lake Area Realtors United, which stated:
[T]his offensive site is a toxic concern for the realtors in the area. I recently ran the comparable sales for the Oak Park and Vista Park neighborhoods. And while surrounding areas continue to flourish, our area just cannot seem to get redevelopment momentum. Many of the builders that have bought lots are waiting for the area to improve. Since the Lake Area Terrace Shopping Center services many ■ surrounding neighborhoods and is the main town center for Oak Park, Vista Park, and Lake Terrace, it is painfully evident that this developer’s detachment from' any semblance of responsibility to our community is adversely affecting our neighborhood and our current promising quality of life. Please help us by doing whatever is in your power to spur removing, developing of this unsightly building, which will in turn bring back homeowners to our once and soon-to-be vibrant neighborhood.
Second, the HO read a written statement into the record signed by approximately twenty-two people of the lake area and the Gentilly neighborhood surrounding the Property, which stated:
[We] all agree that the site represents long-term blight, ongoing mismanagement, and lack of maintenance. [The] Property is visibly deteriorating and is a hazard to the community.
lfiThe property owner and bank have not done due diligence to make repairs, although taxpayer dollars have been invested. We wish the maximum penalty and demolition.
The HO asked whether there was any objection by the defense; DMK’s counsel replied: “Not as to form.”
In support of its position that the Property was neither blighted nor a public nuisance, DMK was allowed to introduce pho *1162 tographs taken a few days before the hearing. DMK represented that its photographs reflected that the grass had been cut and that the Property had been maintained. DMK was also allowed to introduce a letter from Walter Zehner, a consulting engineer, dated the day before the hearing, June 6, 2012, which stated:
I personally visited the referenced property this day and conducted a structural evaluation of the existing structure. It is my opinion that at this time the building is structurally sound and is in no danger whatsoever of collapse and can safely resist a wind load of 180 m.p.h.... The property is also secured from public access with fencing around the entire site.
Finally, DMK presented the testimony of its representative, Mr. Charity.[4] Mr. Charity testified that the structure on the Property was structurally sound, as established by DMK’s expert’s report. He further testified that he planned to get the project done; he blamed bureaucratic red tape for the delay in completing the project. As to upkeep, he testified that DMK had contracted two companies that were doing a rotation on the property to maintain it.
Before rendering a judgment, the HO made the following comment:
[T]he major concern of the hearing officer is that the current owner has owned this property for the amount of time he has, where I’ve seen changes occur to the property, in what |7we noted as removing the wall or the brick walls or some type of structural portion of the property. But I can also note that I have not seen anything to replace that structure that was removed—
Ultimately, the HO concluded that the Property was blighted and a public nuisance. In so doing, the HO took judicial notice of the state of the Property, stating:
[I]n the condition the property is in, I mean, even though it may have been repaired as of today even, it was cited back in 2011. I’m personally familiar with the neighborhood. I don’t live that far away.
I have to find that the property has been just sitting there in a condition of ambiguity for the last five years. The property is blighted. It is allowing a public nuisance.
On June 20, 2012, the HO rendered judgment against DMK finding it in violation of the municipal ordinances prohibiting public nuisance and blighted property. The HO imposed on DMK a fine of $575; recordation fees of $30; notarial fees of $20; and a daily fine of $500 for thirty days or until the violations are corrected, whichever occurs first.
On December 11, 2012, the CDC held a hearing on DMK’s petition to appeal the HO’s judgment and took the matter under advisement. On December 18, 2012, the CDC rendered judgment finding that the HO “acted reasonably and within the authority lawfully granted to him; and his decision was not arbitrary or capricious.” The CDC thus affirmed the HO’s judgment. This appeal followed.
DISCUSSION
The enabling statute for the City’s Code Enforcement Bureau is La. R.S. 13:2575, which provides a right of appeal to any person found in violation of the ^pertinent code provisions. La. R.S. 13:2575(H). The enabling statute, however, is silent on *1163 the applicable standard of review. The general provisions of the Administrative Procedure Act (“APA”) thus apply. This court recently summarized the standard of review under the APA in Clark v. Louisiana State Racing Comm’n, 12-1049, pp. 9-11 (La.App. 4 Cir. 12/12/12), 104 So.3d 820, 826-27, writ denied, 13-0386 (La.4/1/13), 110 So.3d 589, as follows:
A party aggrieved by a final agency decision in an adjudication proceeding is entitled to have that decision reviewed initially by the district court of the parish in which the agency is located. La. R.S. 49:964(A)(1) and (B). The district court acts in the capacity of an intermediate appellate court. A party aggrieved by the district court’s decision is entitled to appeal to the appropriate appellate court as in other civil cases. La. R.S. 49:965. When an appellate court reviews the district court’s judgment, no deference is owed by the appellate court to the district court’s fact findings or legal conclusions, “ ‘just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court.’ ” Bourgeois v. Louisiana State Racing Comm’n, 10-0573, p. 7 (La.App. 4 Cir. 11/12/10), 51 So.3d 851, 856 (quoting Smith v. State, Dep’t of Health and Hospitals, 39,368, pp. 4-5 (La.App. 2d Cir. 03/02/05), 895 So.2d 735, 739).
The standard of appellate review of an administrative agency’s decision is distinct from and narrower than that which applies to ordinary civil and criminal appeals. Reaux v. Louisiana Bd. of Med. Examiners, 02-0906, p. 3 (La.App. 4 Cir. 5/21/03), 850 So.2d 723, 726. The exclusive grounds upon which an administrative agency’s decision may be reversed or modified on appeal are enumerated in La. R.S. 49:964(G) of the Administrative Procedure Act (“APA”). Armstrong v. Louisiana State Bd. of Medical Examiners, 03-1241, pp. 9-11 (La.App. 4 Cir. 2/18/04), 868 So.2d 830, 837-38.

Id.

Defining the scope and standards for judicial review of agency decisions, La. RS. 49:964(G) provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced |;,because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
La. R.S. 49:964(G).
“Judicial review of an agency’s decision is a multifaceted function involving several categories [including] procedural *1164 review, statutory or constitutional review, and substantive review.” Administrators of the Tulane Educational Fund v. Johnson, 00-0297, pp. 2-3 (La.App. 4 Cir. 4/4/01), 784 So.2d 769, 771 (citing Matter of Insulation Technologies, Inc., 95-1184 (La.App. 1 Cir. 2/23/96), 669 So.2d 1343). In this case, we divide our review into two parts: (1) procedural, statutory, and constitutional review, and (2) substantive review.
(1) Procedural, Statutory, and Constitutional Review
DMK’s arguments on appeal, as the City points out, are directed primarily to procedural, statutory, and constitutional issues. Particularly, DMK argues that while administrative hearings lack some of the formalities of judicial proceedings, due process and the APA require that such hearings provide basic protections, discontinuing, DMK argues, as it did in the CDC, that it was not afforded these basic protections at the administrative hearing. DMK contends that judicial review under the APA is limited to the record and that a review of the transcript of the administrative hearing reveals that the hearing was deficient in the following respects:
• Jeremy Stevens is listed as attorney for the City of New Orleans Code Enforcement, although he is not an attorney in fact. The transcript reveals that he was not sworn in, even though he personally testified as to the merits of the ease and acted as an officer of the Court.
• Mr. Stevens ... presents the findings of an unidentified inspector, who in October of 2011, inspected the property. A re-inspection of the property was supposedly conducted on June 7, 2012, by “an inspector,” who also is unidentified. [Mr. Stevens also] introduced into the record pictures [the City] claims were taken by an inspector and the supposed findings of said inspector.
• [U]nidentified person[s] appeared and testified in the case.... [N]one of the witnesses who “testified” against [DMK] appear to have ever been sworn in. None of the “testimony” is verified.
• Ms. Barbara Lacen Kelly testified, without being sworn, as to what Coun-cilmember at Large Stacey [sic] Head wants the Hearing Officer to decide in this case.
• [Mr.] Stevens regales the Hearing Officer with testimony by himself, a non-witness and non-attorney who was not sworn in, that the property was previously found blighted at another hearing. When pressed, Mr. Stevens admitted he could produce no evidence of this claim.
For purposes of analyzing DMK’s procedural, statutory, and constitutional contentions, we group these alleged deficiencies into two categories: (i) witnesses not being required to testify under oath at the administrative hearing, and (ii) hearsay evidence being accepted and the inability to cross-examine witnesses. We separately address each category.
(i) Failure to require witnesses to testify under oath
InThree of DMK’s arguments fall under this category: (1) that none of the witnesses who testified against it were sworn and that their testimony therefore should not have been considered; (2) that numerous unidentified persons were allowed to speak and to present evidence; and (3) that Mr. Stevens, who was neither an attorney nor a sworn witness, was allowed to represent the City as prosecutor and to give testimony at the hearing.
The City counters that DMK cites no authority for its contention that witnesses *1165 were required to be sworn. Citing Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, the City emphasizes that this is an area in which the “more relaxed” evidentiary rules of administrative proceedings apply. The City points out that the APA does not require that live witnesses present sworn testimony at an administrative hearing. La. R.S. 49:956. The City further points out that the APA grants a hearing officer the power to conduct depositions and administer oaths and affirmations; however, it does not state that sworn testimony is the only type of verbal evidence that may be presented at an administrative hearing. The City further counters that, contrary to DMK’s contention, the HO required the witnesses who spoke to state their names and positions for the record so that they were properly identified. Finally, the City emphasizes the failure of either Mr. Charity or DMK’s two attorneys to object to any of the witnesses’ statements at the time of the hearing, which the City contends resulted in a waiver of any objections.[5]
| 12Our research reveals that the enabling statute, La. R.S. 13:2575, requires that “[tjestimony by any person [at any administrative adjudication hearing under this Chapter] shall be taken under oath.” La. R.S. 13:2475(E).[6] Our research, however, further reveals that the requirement that an administrative agency take testimony under oath is “waivable error.” 2 Am.Jur.2d ADMINISTRATIVE LAW § 343 (citing Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards and Bldg. Appeals, 41 Ohio St.2d 41, 70 Ohio Op.2d 123, 322 N.E.2d 629 (1975), and noting that “[u]nder the 1981 Model State Administrative Procedure Act, all testimony of parties and witnesses must be made under oath or affirmation.... However, the failure of an agency to administer an oath or affirmation to a witness is waivable error”); see also Mohilef v. Janovici, 51 Cal.App.4th 267, 58 Cal.Rptr.2d 721 (1996) (rejecting the argument that taking testimony under oath is a constitutional requirement of an administrative public nuisance hearing). Indeed, the APA provides that “[o]bjections to evidentiary offers may be made and shall be noted in the record.” La. R.S. 49:956(1).
In this case, the record reflects that the only witness the HO required to testify under oath was DMK’s representative, Mr. Charity. Although the HO did not require the six community witnesses who testified to testify under oath, the HO required each of those witnesses to state their names and positions for the record. DMK failed to object to these witnesses testifying without being sworn in at the | ^administrative hearing. Given DMK’s failure to object at the hearing, we find, as the City contends, DMK waived its objection to this error.
*1166 DMK’s next argument under this category is that several unidentified persons made statements on the record. The record reflects that these unidentified persons were allowed only to interject brief remarks — generally less than a sentence. These brief interjections by unknown persons were not prejudicial to DMK’s right to a fair hearing.
DMK’s final argument under this category is that the City’s prosecutor, Mr. Stevens, who was neither an attorney nor a sworn witness, was allowed to represent the City as prosecutor and to give testimony as a witness at the hearing. According to DMK, the non-attorney prosecutor held himself out to be an attorney and thus was never sworn in as a witness. This argument lacks support, factually and legally. Legally, as. discussed above, any error in failing to swear in Mr. Stevens as a witness was waived. Factually, the sole reference to Mr. Stevens as an attorney was on the cover page of the transcript of the administrative hearing. On the cover page of the transcript, Mr. Stevens is identified as “Attorney for the City of New Orleans Code Enforcement.” In contrast, at the beginning of the hearing, Mr. Stevens introduced himself as a representative of Code Enforcement. Nowhere in the transcript of the administrative hearing does Mr. Stevens hold himself out to be an attorney. As the City points out, the transcript was not prepared until months after the hearing. DMK’s argument thus is based solely on the after-the-fact clerical error of the court reporter. This argument is unpersuasive.
DMK also contends that Mr. Stevens was improperly allowed to testify that the Property was previously found blighted in another proceeding, a fact which he 114was unable to produce any evidence at the hearing to support. The record reflects that one of the community witnesses, Mr. Wheaton, testified that the blight proceeding regarding the Property dated back to 2010, the year of the prior violation proceeding mentioned by Mr. Stevens. Likewise, DMK’s own attorney acknowledged that the blight proceeding may have dated back to 2010. This argument is thus unpersuasive.
(ii) Hearsay evidence and lack of ability to cross-examine witnesses
The enabling act expressly provides that “[a]ny administrative adjudication hearing held under the provisions of this Chapter shall be conducted in accordance with the rules of evidence of the Administrative Procedure Act.” La. R.S. 13:2575(E). The APA provides that “[ajgencies may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs.” La. R.S. 49:956.
Acknowledging that under the APA hearsay evidence is admissible in administrative proceedings, DMK nonetheless contends the hearsay evidence relied upon in this case — primarily the City’s inspector’s reports — should not have been considered competent evidence by the trial court in sustaining the HO’s judgment. DMK further contends that the inspector’s reports are not only hearsay, but also that the introduction of the reports precluded it from cross-examining the inspector at the hearing. In rejecting this argument, the CDC found that the inspector’s reports were admissible and “would be good and credible evidence.” In so finding, the CDC relied on the statement cited by the City in Wilzcewski v. Brookshire Grocery Co., 10-1148, pp. 12-13 (La.App. 3 Cir. 3/16/11), 59 So.3d 530, 539, that “‘the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence.’ ” Id. (quoting 11SChaisson, 97-1225 at pp. 9-10, 708 So.2d at 381). The CDC also reasoned that even without the in *1167 spector’s report there appeared to be sufficient evidence for the City to prevail.[7]
On appeal, DMK raises the same arguments regarding the inspector’s reports. In support, it cites Williams v. Louisiana Tax Comm’n, 611 So.2d 724 (La.App. 4th Cir.1992), for the proposition that such hearsay evidence although admissible is not competent evidence and thus cannot be used to determine whether the administrative body’s factual findings are valid. In further support, it also cites Bourque v. Louisiana State Racing Comm’n, 611 So.2d 742, 743-44 (La.App. 4th Cir.1992), for the proposition that the right to cross-examine witnesses is a due process requirement that it was not afforded.
The City counters that the CDC correctly found that the inspector’s reports were admissible and competent evidence. The City further counters that DMK’s reliance on Williams, supra, is misplaced because that case is no longer good law given the Louisiana Supreme Court’s more recent holding in Chaisson, supra. The City points out that under Chaisson, supra, hearsay evidence can be competent evidence provided it has some degree of reliability and trustworthiness. The City contends that the inspection reports, which were prepared on the standard “Housing Code Enforcement Uninhabitable/Public Nuisance Violation List” form, satisfy that criteria. The City still further counters that DMK was not entitled to cross-examine the preparer of the inspection reports. As to cross-examination of the other witnesses, the City contends that the record reflects DMK was not | ^prevented from questioning other witnesses, presenting evidence, or objecting to the submission of evidence.
As to cross-examination in general, we note, as the City contends, that the record reflects DMK was not denied the right to cross-examine the witnesses who testified against it. Nor does DMK contend that it was denied that right as to the witnesses who testified at the hearing. Rather, DMK’s argument pertains to the deprival of its right to cross examination inherent in the admission at the hearing of documentary hearsay evidence — primarily the inspector’s reports. As explained below, the basis of DMK’s argument — albeit not identified by name — is the residuum rule.
The residuum rule provides that “ ‘hearsay evidence, at least when not objected to, may be used in administrative proceedings for limited purposes such as corroboration, but that such evidence cannot form the sole basis of the decision.’ ” Clark, 12-1049 at p. 17, 104 So.3d at 831 (quoting Rothbard v. Gerace, 354 So.2d 225, 226 (La.App. 4th Cir.1978)). Under the residuum rule, “‘a court determining sufficiency of evidence (which is a question of law) must find some competent evidence to support an administrative decision and cannot affirm the decision solely on hearsay evidence.’ ” Id.; Bernard Schwartz, A Decade of Administrative Law: 1987-1996, 32 Tulsa L.J. 493, 536 (1997) (distinguishing between admitting incompetent evidence and relying on such evidence in reaching a decision and noting that this is the basis for the residuum rule.) Because we find — as the CDC suggests — that this is not a case in which the sole evidence relied upon by the HO was documentary hearsay, we find it unnecessary to address | T7the issue of the continued applicability of the residuum rule in administrative proceedings.[8]
*1168 We also find—agreeing with the CDC—that the inspector’s reports qualify as competent evidence under the standard adopted in Chaisson, supra. In the Chais-son case, the Louisiana Supreme Court construed the term “competent evidence” in the administrative hearing context as evidence having “some degree of reliability and trustworthiness” and “of the type that reasonable persons would rely upon.” Chaisson, 97-1225 at pp. 12-13, 708 So.2d at 382. The Supreme Court instructed that the determination of whether evidence is “competent” is one that “must be made on a case-by-case basis under the particular facts and circumstances.” Chaisson, 97-1225 at p. 13, 708 So.2d at 382. The Supreme Court explained that “most hearsay evidence in administrative hearings is generally reliable documentary evidence, such as correspondence, physician’s reports, and the like.” Chaisson, 97-1225 at p. 11, 708 So.2d at 382.
Applying these principles, we find that the City’s inspector’s reports fall within that category. As the City points out, the inspection reports were prepared on the standard “Housing Code Enforcement Uninhabitable/Public Nuisance Violation List” form. We thus find the inspector’s reports were competent evidence. See LaFrance v. Weiser Security Service, Inc., 01-1578, pp. 13-14 (La.App. 4 Cir. 3/27/02), 815 So.2d 339, 348-49 (finding elevator repair records fell within this category). As we noted in LaFrance, supra, these reports are “the exact type of documentary evidence for which the pragmatic rule allowing relaxation of technical evidentiary rules in administrative hearings ... was adopted.” Id.
In sum, we find, for the reasons outlined above, that DMK’s procedural, statutory, and constitutional contentions are unpersuasive. We now turn to the substantive review of the record.
(2) Substantive Review
The definitions of blight and public nuisance are set forth in the governing municipal ordinances, which provide as follows:
Sec. 28-37. Public nuisance defined.
Any unoccupied property shall be deemed a public nuisance if:
(c) The unoccupied property and its surrounding grounds are not adequately maintained thereby causing an adverse affect on nearby properties by depreciating the value, use, and enjoyment that is harmful to the public health, welfare, morals, safety and the economic stability of the area, community, or neighborhood in which the public nuisance is located. (M.C.S., Ord. No. 23046, § 5, 3-20-08) Sec. 28-38. Blighted property.
(a) In determining whether an unoccupied property is blighted, pursuant to *1169 section 8 of Act No. 170 of the 1968 Regular Session of the Louisiana [Legislature], as amended by Act No. 135 of the 1994 Third Extraordinary Session, Act No. 375 of the 1995 Regular Session, and Act No. 101 of the 1997 Regular Session, the following factors establish a rebuttable presumption:
(1) Any dwelling, structure or premise that is declared a public nuisance as defined in the Code of Ordinances for the City of New Orleans or any dwelling, structure, or premise that demonstrates chronic vacancy or unresolved code violations for unsafe, unsanitary, or unhealthy conditions; (M.C.S., Ord. No. 23046, § 5, 3-20-08; M.C.S., Ord. No. 24560, § 1, 8-18-11)
| iflThe record reflects, as the City contends, that the City as well as members of the community presented substantial evidence at the administrative hearing establishing the Property was chronically vacant, not adequately maintained, and causing an adverse effect on nearby properties. In addition, the HO, who lived nearby the Property, took judicial notice of the condition of the Property.
“Chronic vacancy,” within the meaning of the municipal ordinance, was established by the undisputed fact that the Property has been vacant and unoccupied for almost five years — from the date DMK purchased it (April 2007) through the date of the administrative hearing (June 2012). Moreover, DMK has not begun work to repair the structure on the Property so that a tenant can inhabit it.
Lack of adequate maintenance was established by the inspection reports and photographs the City and members of the community introduced and by the testimony of members of the community. DMK’s defense at the hearing was that it had cut the grass inside the boundaries of the Property. DMK’s only other response was to seek to reconvene the hearing in three months to give it additional time to take action. Noting the community’s opposition to this request, the HO denied this request.
The adverse effect on the neighboring properties was established by the testimony of the members of the community and by the letter from the Lake Area Realtors United characterizing the Property as a “toxic concern for realtors in the area.”
Finally, the HO — noting that he lived in the neighborhood and that he was personally familiar with the status of the Property — took judicial notice of the blighted state of the Property. As the City points out, La. R.S. 49:956(3) Unauthorized the HO to do so; it provides “[n]otice may be taken of judicially cognizable facts.” Id,
DMK also suggests that the HO erred in finding the Property blighted given it established, through the report of its expert engineer, that the Property is structurally sound. We disagree. As the City points out, “a building does not have to be in imminent danger of collapse to be deemed a public nuisance.” DMK’s engineer’s report does not address whether the Property was maintained.
To conclude, the HO made factual findings based on the record and took judicial notice of the blighted state of the Property. Based on our review of the record, we find, as did the CDC, that the HO’s findings were not arbitrary or capricious.

DECREE

For the forgoing reasons, the judgment of the Hearing Officer is affirmed.
AFFIRMED.

. Attached to the inspection report in the record are copies of four pictures of the Property dated the same date as the initial inspection.

. Attached to the re-inspection report in the record are copies of fourteen pictures of the Property dated the same date as the re-inspection.

. As discussed elsewhere in this opinion, DMK introduced at the hearing a letter from Walter Zehner, a consulting engineer.

. DMK's representative, Mr. Charity, was the only witness that the HO required to testify under oath. The other six community members who testified were not placed under oath. DMK, however, did not object at the hearing to the HO's failure to place the other witnesses under oath.

. We note that the City also contends that DMK waived all of its procedural objections that it raises on appeal by failing to object at the hearing. In support, it cites Woods v. Cameco Ind., Inc., 01-0298, p. 10 (La.App. 1 Cir. 3/28/02), 815 So.2d 370, 377, for the proposition that "any post hearing objection to the admissibility of this evidence as hearsay is untimely and has been waived.” Id.

. La. R.S. 13:2575(E) provides that:
E. Any administrative adjudication hearing held under the provisions of this Chapter shall be conducted in accordance with the rules of' evidence of the Administrative Procedure Act. Testimony by any person shall be taken under oath. The person charged with the ordinance violation may present any relevant evidence and testimo- . ny at such hearing and may be represented by an attorney at law. However, his physical presence shall not be required at the hearing if documentary evidence, duly verified by such person, is submitted to the hearing officer prior to the date of the hearing.

. Although the City also contended before the CDC that the inspector's reports fall within the ambit of the business record exception to the hearsay rule under La. C.E. art. 803(6), the CDC did not definitely decide this issue. We likewise find it unnecessary to decide this issue.

. Discussing this issue, a commentator points out the following regarding the residuum rule:.
*1168 The jurisprudence is unclear as to whether the residuum rule applies to hearsay evidence in Louisiana agency proceedings. The overarching principle of the residuum rule is that while hearsay evidence generally may be used in administrative hearings, it cannot form the sole basis of the decision resulting from the adjudication. The Louisiana Supreme Court, however, has never held that the residuum rule must apply to direct the outcome of agency adjudications, and the rule has not received universal acceptance within the state’s appellate courts. In Germany v. State, [Through Office of Secretary Dep’t of Health and Human Resources, 493 So.2d 800 (La.App. 2d Cir.1986)], for example, the second circuit upheld the Department of Health and Human Resource’s admission of out-of-court statements taken from a school bus driver to determine residency issues. The court ruled that “it is ... clear from the [L] APA and interpretive jurisprudence that hearsay is admissible in the instant cause in determining the ultimate issue.”
Brandee Ketchum, Andrew Olsan, Louisiana Administrative Law: A Practitioner's Primer, 68 La. L.Rev. 1313, 1342 (2008).