JOY COSSICH LOBRANO, Judge.
| Appellants, Amare E. Gebre (“Ge-bre”) [1] and Fair Zone Food Store, L.L.C. (“Fair Zone”), appeal the district court’s April 8, 2014 judgment in favor of defendants, City of New Orleans (“City”), and the City’s Board of Zoning Adjustments (“BZA”), affirming the BZA’s finding that the August 21, 2013 restoration permit was issued to Gebre in error and that Gebre is not entitled to a restoration permit. The BZA found, as did the district court, that the damage to the building which required its demolition was caused by years of post-Katrina neglect, rather than Hurricane Isaac, and thus the building lost its permitted nonconforming use status under the terms of the City of New Orleans Comprehensive Zoning Ordinance (“CZO”).[2] For the reasons set forth below, we find that the ruling of the district court should be affirmed.
1 ?Gebre is the owner of property located at 1544 Gentilly Boulevard in New Orleans, across from Stallings Playground and in the Fairgrounds Triangle neighborhood. The property is leased by Fair Zone. Prior to the landfall of Hurricane Isaac on August 29, 2012, Fair Zone operated a grocery store with alcohol sales as a legal, nonconforming use of the property. On October 30, 2012, the City ordered the building demolished after determining that it was in imminent danger of collapse.
The parties do not dispute that the building was vacant for a period of at least six calendar months, so that by the terms of the CZO, under normal circumstances, Appellants’ “grandfathered” nonconform *728 ing use would have expired.[3] However, based on his contention that the building on his property was destroyed by Hurricane Isaac, rather than his ongoing neglect, Gebre applied for a restoration permit pursuant to CZO § 13.3.1, which states:
Buildings legally nonconforming as to use that are in whole or in part destroyed by fire, storms or other acts of God or the public enemy may be restored, provided that the restoration is accomplished with no increase in cubical content and no increase in floor area over the building existing immediately prior to damage.
Gebre’s application was filed within one year of Hurricane Isaac. Section 13.3.2 of the CZO states:
Application for a restoration permit shall be made within one year of the destruction in whole or in part by fire, storms or other acts of God or the public enemy. Restoration shall be completed within one year from the date of issuance of the restoration permit unless extensions are approved by the Board of Zoning Adjustments.
Ir-jOn August 23, 2013, the Department of Safety and Permits (“DSP”) issued Gebre a restoration permit. On October 3, 2013, the Fairgrounds Triangle Neighborhood Association (“FTNA”) filed an appeal with the BZA objecting to the issuance of the restoration permit, arguing (as does the City) that Hurricane Isaac was not the cause of the destruction of Gebre’s building; rather, the cause was lingering unre-paired damage from Hurricane Katrina in 2005 and from two incidents between Hurricanes Katrina and Isaac in which vehicles struck the building. Accordingly, FTNA argues, because the demolition was required due to neglect, not due to an act of God in the form of Hurricane Isaac, Gebre was not entitled to the restoration permit. The BZA held a public hearing on this matter on November 11, 2013.
At the hearing, the BZA heard testimony from 11 individuals opposing the restoration permit, and was presented with a packet of letters and emails from many more also opposing it, as well as the sworn affidavit of Terry White, owner of an adjacent property. While a good deal of the testimony did address quality of life issues related to the negative effect of alcohol sales, in the words of the district court, “the-record is replete with evidence that the building in question was damaged before Hurricane Isaac and remained unre-paired.” Residents who had lived there long before Hurricane Katrina noted that the ongoing neglect predated even Katrina, increasing significantly afterwards. No permits were obtained following Katrina to repair extensive damage then, and subsequent to that, two separate vehicle accidents took place which resulted in collisions with the building. |4In one case a vehicle collided with a support post, which was knocked out of place and left unre-paired. Terry White’s affidavit reflects that prior to Hurricane Katrina, the building was physically leaning towards his property, and after Hurricane Katrina, damaged portions of the building began falling away and on to his house, revealing extensive termite damage to the underlying structure. White’s testimony echoes the statements of others at the hearing that no other nearby structures suffered any damage from Hurricane Isaac. Finally, at the hearing, DPS Director Jared *729 Munster acknowledged that while the building was demolished shortly after Hurricane Isaac, the demolition was made due to a call to the police reporting the building as a safety hazard, and the resulting finding of the safety inspector was that the building was in imminent danger of collapse, but no specific finding as to the cause was made.
Following the hearing, the BZA voted to reverse the August 21, 2013 decision to grant a restoration permit to Gebre finding that the permit was issued in error, having determined that the damage to the building which required its demolition was caused by years of ongoing neglect, not Hurricane Isaac. On November 20, 2013, Gebre and Fair Zone filed a petition in Civil District Court for the Parish of Orleans to appeal the BZA’s decision. In the petition, they sought judicial review of the BZA decision and a stay under La. R.S. 49:964 against the enforcement of that decision. The district court issued a temporary restraining order staying the enforcement of the BZA’s November 11, 2013 decision until the [¡¡final disposition of this matter by the district court. The district court also ordered that no alcohol sales occur at 1544 Gentilly Boulevard until final disposition.
On December 6, 2013, FTNA intervened in the appeal of the BZA’s November 11, 2013 decision revoking Gebre’s restoration permit, and on December 13, 2013, the City answered the appeal. Subsequently, in response to the Intervention, Gebre and Fair Zone filed an exception of no right of action as to FTNA’s right to bring this claim, and Gebre filed a motion to traverse FTNA’s alleged pauper status. These were followed by Gebre’s and Fair Zone’s motion to receive and consider additional evidence, motion to strike and special motion to strike, and a motion for summary judgment.[4] On February 3, 2014, the district court overruled the exception of no right of action and denied the motion to traverse; on March 14, 2014, the district court denied the motion to strike and special motion to strike in open court;[5] and on March 20, 2014 the district court entered judgment denying the motion for summary judgment. On March 28, 2014, the district court heard the motion to receive and consider additional evidence, and denied it without prejudice.
Following the trial of the appeal of the BZA’s decision held on March 31, 2014, the district court rendered judgment on April 8, 2014, in favor of the City and the BZA, affirming the BZA’s finding that the building permit was issued in | ,;error. The district court ruled that Gebre is not entitled to a restoration permit under CZO § 13.3.[6] In its reasons for judgment, the district court acknowledged that its role in reviewing an appeal from a decision of the BZA is to determine whether the decision was arbitrary and capricious. After reviewing the evidence and considering the arguments of counsel, the district court found *730 that the BZA’s decision was neither arbitrary nor capricious. The district court noted that the record is replete with evidence that “the building in question was damaged before Hurricane Isaac and remained unrepaired,” and stated that it was “particularly swayed by the testimony of neighborhood resident Terry White.” Ge-bre and Fair Zone now appeal the district court’s April 8, 2014 judgment.
On appeal, Gebre and Fair Zone present the following seven assignments of error:
1. The district court erred in denying Appellants’ Exception of No Right of Action as to the standing of the FTNA;
2. The district court erred in denying Gebre’s Motion to Traverse the alleged In Forma Pauperis status of the FTNA;
3. The district court erred in denying Appellants’ Special Motion to Strike under La. C.C.P. art. 971;
4. The district court erred in denying Appellants’ Motion to Receive and Consider Additional Evidence (Expand the Record) under La. R.S. 33:4727;
5. The district court erred in denying Appellants’ Motion for Summary Judgment;
6. The district court erred in determining that the BZA’s decision was “neither arbitrary nor capricious”; and
[7. The district court erred in determining that “the building in question was damaged before Isaac, and remained unrepaired.”
This appeal challenges both the district court’s rulings on pre-trial motions, as well as the decision of the BZA. Accordingly, we apply differing standards of review. The district court’s rulings on plaintiffs’ pre-trial motions are subject to de novo review where legal questions are implicated, and manifest error where factual determinations are at issue. Wooley v. Lucksinger, 2009-0571 (La.4/1/11), pp. 49-50, 61 So.3d 507, 554-555. The BZA’s decisions are subject to a rebuttable presumption of validity and should not be reversed by a reviewing court absent “a clear showing that the decision (1) was arbitrary or capricious, (2) was an abuse of the BZA’s discretion, or (3) was manifestly erroneous based on the evidence in the record on appeal.” Craig v. City of New Orleans Bd. of Zoning Adjustments, 2004-1709, p. 7 (La.App. 4 Cir. 5/4/05), 903 So.2d 530, 535, citing Elysian Fields, Inc. v. St. Martin, 600 So.2d 69, 72 (La.App. 4 Cir.1992).
Assignment of Error # 1 — No Right of Action
Appellants raised the threshold issue of standing, arguing that the district court erred when it denied their motion to dismiss the FTNA for no right of action. Appellants argue that in appealing the grant of the permit to the BZA, the FTNA was not an “aggrieved party” for purposes of the statute and ordinance relied upon, and further, that it does not meet the requirements for standing set forth in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), pointing to decisions of this Court in Vieux Carre Prop. Owners, Residents, & Assoc., Inc. v. Hotel Royal, L.L.C., 2009-0641 (La.App. 4 Cir. 2/3/10), 55 So.3d 1, on reh’g (Jan. 5, 2011), writ denied, 2011-0258 (La.4/29/2011), 62 So.3d 112, and Yokum v. Nicholas Karno, II, Inc., 2010-1239 (La.8App. 4 Cir. 6/1/2011), 66 So.3d 1240, writ denied, 2011-1788 (La.9/30/11), 71 So.3d 294.
FTNA’s right of action was premised on La. R.S. 33:4727 and the CZO, which provide:
*731 Any person or persons jointly or severally aggrieved by any decision by the board of adjustment of any officer, department, board, or bureau of the municipality, may present to the district court of the parish or city in which the property affected is located a petition, duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality.
La. Rev. Stat. Ann. 38:4727(E)(1) (emphasis added); and
Appeals to the Board may be taken by any party aggrieved, or by any officer, department, commission, board, bureau, or any other agency of the City of New Orleans affected by any decision of the Director of Safety and Permits concerning application or interpretation of the provisions of the Comprehensive Zoning Ordinance.
CZO § 14.5.1 (emphasis added).
These provisions codify and confer a right of action upon “aggrieved parties.” While “aggrieved party” is not defined within the invoked provisions, this Court has previously held that adjacent property owners and neighbors come within the provisions. Cupit v. City of New Orleans, ex rel Bd. of Zoning Adjustments, 2012-1708, p. 9 (La.App. 4 Cir. 7/17/13), 120 So.3d 862, 867; Carrollton/Riverbend Neighborhood Ass’n v. City of New Orleans ex rel. Bd. of Zoning Adjustments, 2011-1737 (La.App. 4 Cir. 6/27/12), 2012 WL 4760796, at *6 (citations omitted).
With respect to Appellants’ argument that to establish a right of action, FTNA must satisfy the three-part test for assoei-ational standing set out in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), as applied in Vieux Carre Property Owners v. Hotel Royal, and Yokum v. Nicholas Karno, II, Inc., the Court notes that as observed by the courts in both |nCupit and Carrollton, those cases are distinguishable due to their procedural posture. In both Hotel Royal and Yokum, plaintiffs filed suit in the district court for injunctive relief, and thus were subject to the jurisprudential requirements for standing. In the instant ease, the FTNA did not bring suit for injunctive relief in the district court, but rather sought judicial review of an administrative decision under a statute which specifically confers that right of action. As aptly noted by the Carrollton court:
Unlike Hotel Royal and Yokum, which involved injunctions to prevent the violations of applicable zoning ordinances, this case involves judicial review of a decision of the BZA granting a variance to zoning ordinances. The right to judicial review of a BZA decision to grant a variance is provided by statute and ordinance. Nothing in Hotel Royal and Yo-kum implies intent to overturn years of jurisprudence allowing neighbors and neighborhood associations to seek judicial review of a BZA decision to grant a variance to zoning ordinances.
Carrollton/Riverbend Neighborhood Ass’n v. City of New Orleans ex rel. Bd. of Zoning Adjustments, 2011-1737, p. 5 (La.App. 4 Cir. 6/27/12), 2012 WL 4760796, *5 (citations omitted).
Accordingly, the Court finds that the FTNA has a right of action to seek judicial review pursuant to La. R.S. 33:4727 and CZO § 14.4.1, and this assignment of error is without merit.
Assignment of Error #2 — Pauper Status of FTNA
Intervenor, FTNA, is proceeding informa pauperis, pursuant to La. C.C.P. art. 5181. Gebre filed a motion in the district court traversing FTNA’s pauper status, which was denied, and now appeals that denial.
*732 “The trial court is afforded wide discretion in determining whether to grant the privilege to litigate in forma pauper-is.’’ Ainsworth v. Ainsworth, 2003-1626 (La.App. 4 Cir. 10/22/03), p. 2, 860 So.2d 104, 108 writ denied, 2003-2964 (La.101/9/04), 862 So.2d 995 (citations omitted). Such discretion must be exercised reasonably and is subject to review for abuse. McCoy v. Winn-Dixie Louisiana, Inc., 339 So.2d 976 (La.App. 4 Cir.1976), rev’d on other grounds, 345 So.2d 1175 (La.1977).
As observed by the Louisiana Supreme Court, "... [t]he purpose ascribed to the legislative privilege is to assure that no litigant be deprived of his day in court because of a lack of financial means to pay court costs.” Benjamin v. National Super Markets, Inc., 351 So.2d 138, 141 (La.1977), writ denied, 366 So.2d 561 (La.1979). Moreover, “... a liberal construction should be applied in close or questionable cases to make sure that a litigant who is entitled to such a privilege is not deprived of it.” Id. at 142 (internal quotations omitted).
The record reflects that the FTNA, a non-profit neighborhood association, has no bank accounts, no income sources, and no other financial resources available to prosecute its case, and its attorney is donating her time pro bono. The district court considered the totality of the circumstances surrounding the application and determined that FTNA was entitled to proceed in forma pauperis. On this record, we cannot find that the district court abused its wide discretion in granting the FTNA pauper status, and accordingly, find this assignment of error to be without merit.
Assignment of Error #3 — Special Motion to Strike
In their original motion to strike, Appellants argued that certain allegations in FTNA’s intervention should be stricken pursuant to La. C.C.P. articles 964 and 971. Specifically, Appellants object to the allegations contained in paragraph 4, which asserts that “[t]he City of New Orleans had documented the building as unsafe and unsound for many years prior to August 29, 2012” and then lists nine | nCode complaints between 2005 and 2011; paragraph 12, which asserts that “the building was structurally unsound and unsafe for many years” and that “the building was heavily damaged after Hurricane Katrina;” and paragraph 13, which asserts that “structural repairs” were required after an alleged December 2011 vehicle strike of the building.
On appeal, Appellants take issue solely with the district court’s denial of their motion to strike pursuant to La. C.C.P. art. 971, which provides:
(A)(1) A cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(Emphasis added).
Article 971 belongs to the class of statutes known as “anti-SLAPP statutes,” SLAPP being the acronym for “Strategic Suits Against Public Policy,” and applies in a very specific situation — when a litigant has brought a cause of action, typically alleging defamation, in an effort to chill the First Amendment speech of its target. By its very terms, La. C.C.P. art. 971 applies to a cause of action, not to isolated allegations within a petition with which a litigant takes issue. See, Louisiana Crisis *733 Assistance Cir. v. Marzano-Lesnevich, 878 F.Supp.2d 662, 669 (E.D.La.2012).
In the instant case, Appellants rely on La. C.C.P. 971 not to dismiss any cause of action, but to strike specific allegations within the FTNA’s intervention with which they take issue. These isolated allegations, which do not constitute a cause of action and have no relation to Gebre’s exercise of free speech, are not 112properly the subject of a Special Motion to Strike under La. C.C.P. 971.[7] This assignment of error is therefore also lacking in merit.
Assignment of Error # 4 — Motion to Receive and Consider Additional Evidence and Testimony
Appellants contend that the district court erred when it denied their motion to receive and consider additional evidence and testimony from their separate demolition case,[8] pointing to La. R.S. 33:4727(E)(4), which provides: “If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence.... ” In connection with this, Appellants also claim that the DSP failed in its duty when it transmitted the record to the BZA, citing La. R.S. 33:4727(C)(2), which states: “The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken_” Appellants further argue that by specifically referencing certain incident reports in its Intervention, the FTNA “opened the door” to their inclusion even though they were not part of the BZA record. In sum, it is Appellants’ contention that “proper disposition of this matter” required the evidence related to the demolition case, including the incident reports cited in the Intervention, and the fact that they were not considered by the BZA renders the BZA’s decision arbitrary and capricious.
l ioAs explicitly noted on more than one occasion by this Court, “Rfevised] Statute] 33:4727 provides it is within the discretion of the district court to allow new evidence in order to clarify the issues.” Coliseum, Square Ass’n, Inc. v. Bd. of Zoning Adjustments of City of New Orleans, 374 So.2d 177, 179 (La.Ct.App.1979); see also, In re Coleman, 242 So.2d 602, 605 (La.Ct.App.1970) (“It is clear from the face of the statute that it is discretionary with district court to allow additional evidence.”).
Our review of the record satisfies us that the district court did not abuse its discretion in denying the admission of additional evidence in this case. The record reflects that following the filing of the appeal of the grant of the restoration permit, the DSP transmitted all of its records related to the restoration permitting process, which in fact comprised “all the papers constituting the record upon which the action appealed from was taken.” See *734 La. R.S. 33:4727(0(2). While it is true that the DSP did not forward additional records related to Appellants’ separate demolition case, the statute does not require the DSP to submit records for a matter that is not the subject of the appeal. Moreover, Appellants did not seek to admit the additional records at that BZA hearing, or to supplement the record at that juncture.
At the hearing on the Motion to Receive and Consider Additional Evidence held on March 28, 2014, the district court accepted the Appellants’ proffer of the additional demolition ease records, which included the incident reports, insurance records, construction contracts, DSP and Historic District Landmark Commission records relating to the demolition, photographs, ands alcoholic beverage permits, precisely for the purpose of determining in accordance with La. R.S. 33:4727(E)(4) whether the additional testimony was necessary for the proper disposition of the case. The district court stated on the record that her review of the 1 up:roffered materials was for the purpose of determining whether the BZA was arbitrary and capricious in not considering evidence it should have had in front of it, and having done so ultimately found no need to expand the record. As stated above, the records Appellants sought to admit were available to them prior to the BZA hearing, and Appellants did not present the additional evidence then, or move to supplement the record at that time. On this record, we find that this assignment of error lacks merit.
Assignment of Error # 5 — Summary Judgment Motion
Appellants also argue that the district court erred when it denied their motion for summary judgment, apparently premised on their claim that the BZA’s ruling was a nullity, because it never acquired jurisdiction due to formal defects in the appeal filed by the FTNA. However, the Court lacks appellate jurisdiction over this assignment of error. “The denial of summary judgment is an interlocutory judgment, which is not appealable. Only final judgments are appealable, unless the law expressly provides that an interlocutory judgment is appealable. See La. C.C.P. art. 2083(A) and (C). Louisiana Code of Civil Procedure Article 968 states that £[a]n appeal does not lie from the court’s refusal to render any judgment on the pleading or summary judgment.’ ” Weber v. Canal Indem. Co., 2011-0852 (La.App. 4 Cir. 1/11/12), 81 So.3d 990, 992, writ denied, 2012-0372 (La.4/9/12), 85 So.3d 700. Accordingly, we lack jurisdiction over this assignment of error and do not consider it.
Assignment of Error #6 — Review of BZA’s Decision
Appellants contend that numerous defects in the BZA proceedings render its decision based upon those proceedings arbitrary and capricious. Specifically, they argue that the BZA’s procedure was unlawful because it: accepted a legally 11Kdefective appeal; accepted a limited and defective record; failed to provide required notice of the appeal; considered evidence without authentication; considered unsworn testimony; improperly considered “quality of life” complaints; improperly shifted the burden of proof; and failed to issue findings of fact.
The aggrieved party bears the burden of showing that the BZA decision is arbitrary, capricious, or manifestly erroneous in light of substantial evidence in the record. Esplanade Ridge Civic Ass’n v. City of New Orleans, 2013-1062, p. 8 (La.App. 4 Cir. 2/12/14), 136 So.3d 166, 171; Cordes v. Bd. of Zoning Adjustments, 2009-0976, pp. 67, 31 (La.App. 4 Cir. 1/20/10), 31 So.3d 504, 508-09, writ denied, 2010-0584 (La.5/21/10), 36 So.3d 233. As set forth below, we find that Appellants’ *735 allegations concerning defects in the BZA procedure do not convince us that the BZA was arbitrary and capricious in reaching its result.
With respect to Appellants’ claim that the record was limited and defective, that argument has been considered and rejected in addressing the fourth assignment of error, supra.
With respect to the claim that the BZA accepted a legally defective appeal, Appellants argue that in filling out the appeal form, FTNA did not provide enough information as to the basis of its appeal for them to adequately respond. A review of the appeal form reveals that it was completed in its entirety. In the section asking for a “summary description of decision and reason for appeal,” FTNA noted that they were “appealing issuance of building permit # 13-06097-NEWC-8/21/2013 issue date.” While admittedly brief, the form requests a summary and permits only three lines for a response, and the FTNA’s response makes clear the decision with which it takes issue. Moreover, the trial transcript reveals that upon questioning by the district court, Appellants’ counsel acknowledged that he knew 11 (¡before the BZA hearing that the central issue would be whether the damage to the building was caused by ongoing post-Katrina neglect or from Hurricane Isaac, and while counsel claims to have been prejudiced by learning of this closer in time to the BZA hearing than he would have liked, he also acknowledged that he could have, but did not, move for a continuance of the BZA hearing. On this record, we do not find that the appeal was fatally defective.
With respect to Appellants’ claim that the BZA failed to provide adequate notice of the November 11, 2013 hearing, we are also unpersuaded. Appellants point to La. R.S. 33:472T(C)(2)(c), which states:
The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the interested parties, and decide the appeal within a reasonable time. Upon the hearing any party may appear in person or by agent or by attorney.
Similarly, CZO § 14.9 provides that the BZA shall give “personal notice to the interested parties no later than five (5) days preceding the hearing date.” While acknowledging that public notice was made to the neighborhood, Appellants argue that the fact that Gebre, as an interested party, received no personal notice, and therefore renders the resulting decision arbitrary and capricious, relying on the decision in Mid City Neighborhood Organization v. New Orleans ex rel. Bd. of Zoning Adjustments, 2000-1904 (La.App. 4 Cir. 8/29/01), 798 So.2d 1024. In Mid City, this Court vacated a decision by the BZA based on the fact that the record was “completely devoid of any evidence demonstrating that public notice of the .... hearing was given.” Id. at 1026.
However, the Mid-City case is distinguishable, because the issue was whether a lack of public notice rendered a BZA decision null and void. In the instant case, there is no suggestion that there was a lack of public notice; rather, 117Gebre takes issue with the fact that he received no personal notice. This argument fails because it is clear that Gebre had actual notice of the proceedings, his retained counsel communicated with the BZA prior to the hearing, and he appeared and was represented by counsel at the hearing. Our courts have repeatedly held that “[a]p-pearance in person or by attorney at an administrative hearing waives any irregularity or imperfection in the service of notice.” Brown v. Sutton, 356 So.2d 965, 972 (La.1978) (citations omitted).
*736 With respect to Appellants’ arguments regarding the admission of un-sworn testimony and unauthenticated evidence, we likewise find them without merit. Administrative proceedings are subject to a “more relaxed standard for the admissibility of evidence.” Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.03/04/98), 708 So.2d 375, 381. For this reason, “the requirement that an administrative agency take testimony under oath is ‘waivable error.’ ” DMK Acquisitions & Properties, LLC v. City of New Orleans, 2013-405, 12 (La.App. 4th Cir.9/18/13), 124 So.3d 1157, 1165 (finding that plaintiffs failure to object to community members’ testimony at an administrative hearing because it had not been given under oath constituted a waiver of that requirement). Each speaker at the BZA hearing identified him or herself on the record. Appellants’ counsel was present at the BZA hearing and made no contemporaneous objection to the fact that public comments were not being made under oath, nor did he request an opportunity to cross-examine any of the com-menters. On this record, we find that the evidentiary defects complained of were waived by Appellants. We also note that the sworn affidavit of White, was in fact made under oath and corroborates the facts relied upon by the BZA in its determination.
11sWith respect to Appellants’ contention that public comments at the hearing reflecting the quality of life concerns of neighbors were improperly weighed in the BZA’s final determination, we find that the record explicitly belies this claim. With respect to quality of life concerns, the BZA stated:
... the concerns that were brought up, not that they are not important, but they are not within our responsibility to make our decision based upon. Our decision is simply whether or not the decision by Safety and Permits was correct or not. And I don’t want to make it appear as though no one is hearing the concerns that the neighborhood brings up, but that’s why we ask, so that you have suggestions on what your options, that there are other places that you can go to voice those concerns, which are as a community very important.
Thus, the BZA recognized that citizens’ quality of life concerns, while otherwise valid, were not part of the calculus of the correctness or not of the issuance of the permit. Appellants maintain that the BZA stated that “the comments the public makes do go into the analysis of whether or not there is error in the city’s judgment.” However, this supports rather than undermines the view that the BZA weighed the commentary it was authorized to and dismissed the irrelevant comments. After acknowledging that quality of life concerns were not properly the subject of the BZA review, the BZA noted that others were, specifically comments that shed light on the facts surrounding the issue properly before it: “our job is to decide whether or not the City made an error ... but [in] order to make that decision, we have to listen to and review all the documents for both sides.” Thus, the part of the record cited by Appellants reflects that the BZA parsed and distinguished comments directed to quality of life issues versus comments addressing the main factual issue in the case, considering only the latter in its decision. Accordingly, this argument, too, fails.
|18With respect to Appellants’ argument that the BZA improperly “shifted the burden of proof,” because as the party appealing a determination of the DSP, the FTNA did not meet its burden of proving the DSP’s determinations were erroneous, we also are unpersuaded. Appellants cite no law for this proposition, and a review of the relevant statutory provisions *737 does not suggest that the BZA, in conducting its quasi-judicial proceedings, is constrained in making its decision by whether the party has proven the DSP was erroneous. To the contrary, the BZA is specifically authorized to “reverse or affirm, wholly or partly, or may modify” the decision appealed from and may make such decision “as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.” La. R.S. 33:4727(D)(1). “In passing upon appeals, where there are practical difficulties” the BZA is empowered to “vary or modify the application” of the CZO “so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done.” La. R.S. 33:4727(C)(3)(c). Thus, the inquiry at the center of a BZA hearing is not to determine whether a challenger has shown the City to be wrong, but to determine whether the proper decision was made and if not, to remedy that fact. Moreover, to the extent that a burden of proof is relevant in the context of the BZA’s determination whether a permit should have issued, there is no question that “[t]he burden of proof to establish the existencé and retention of a nonconforming use shall be on the property owner of the building or land claiming retention of said nonconforming use by clear and convincing evidence.” CZO § 13.2.1.
With respect to Appellants’ claim that the BZA was arbitrary and capricious in its failure to issue formal written findings of fact and conclusions of law, we also disagree. Neither the CZO nor the State enabling legislation given at La. R.S. 1 an33:4721, et seq., contains a requirement that the BZA issue formal written findings of fact and conclusions of law. However, as acknowledged by Appellants in their brief, where an administrative-review enabling statute is silent, the general provisions of the Administrative Procedure Act (“APA”) apply. DMK Acquisitions & Properties, L.L.C. v. City of New Orleans, 2013-0405, p. 8 (La.App. 4 Cir. 9/18/13), 124 So.3d 1157, 1162-63 (La.Ct.App.2013). Under the APA, “[a] final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record.” La. R.S. 49:958 (emphasis added). This provision gives the reviewing agency the option of stating its reasons in the record. Durousseau v. Louisiana State Racing Comm’n, 399 So.2d 1288, 1290 (La.Ct.App.1981). A review of the hearing transcript reflects that the BZA did in fact give oral reasons at the hearing, finding that Appellants had failed to demonstrate that the building’s disrepair was due to Hurricane Isaac rather than years of disrepair and neglect, and thus as a matter of law, it was not entitled to a permit extending the prior nonconforming use. Accordingly, this argument also fails.
For all of the foregoing reasons, Appellants’ contention that the district court erred in finding that the BZA was not arbitrary and capricious is also lacking in merit.
Assignment of Error # 7 — Cause of Damage to Building
In the final assignment of error, Appellants seek review of the factual findings of the district court, arguing that the district court erred in determining that “the building in question was damaged before Isaac, and remained unrepaired.” However, as an appellate court sitting in review of an administrative agency, we review the findings and decision of the administrative agency, not those of the district court. Clark v. Louisiana State Racing Comm’n, 2012-1049 21(La.App. 4 Cir. 12/12/12), 104 So.3d 820, 826-27, p. 9, writ denied, 2013-0386 (La.4/1/13), 110 So.3d 589. As a reviewing court, “we should not set aside an administrative agency’s decision ... unless that decision can be characterized as arbitrary, capricious, or an abuse of discretion.” Id. Thus, *738 “even if we disagree with a holding of the [BZA], we are nevertheless obliged to sustain the [BZA] ’s conclusion unless the evidence in its entirety so strongly preponderates against the [BZA] ’s decision that it compels us to find an abuse of discretion on the part of the BZA. In other words, in the absence of a clear abuse of discretion, we have no authority to substitute our conclusions for those of the BZA.” Coliseum Square Ass’n, Inc. v. Bd. of Zoning Adjustments of City of New Orleans, 374 So.2d 177, 179 (La.Ct.App.1979); see also, Toups v. City of Shreveport, 2010-1559, pp. 3-4 (La.3/15/11), 60 So.3d 1215, 1217. Thus, we are tasked with determining whether the BZA’s decision was arbitrary and capricious, or an abuse of discretion, based on the record on appeal.
The record before us reveals that the building was damaged during Hurricane Katrina, and no permits were pulled for post-Katrina repairs; two automobile accidents involving collisions into the building did further damage to the building; no other buildings in the neighborhood sustained any damage as a result of Hurricane Isaac; the BZA heard live testimony regarding the poor condition of the building, including the fact that it was leaning on to the house next door, prior to Hurricane Isaac; and while the DPS determined that the building was in imminent collapse after Hurricane Isaac, it did not determine that the damage was caused by Hurricane Isaac. On this record, we simply do not find that Appellants have met their burden of showing that the BZA decision is arbitrary, capricious, or manifestly erroneous in light of the substantial record evidence.
| ¡^Accordingly, the ruling of the district court is hereby affirmed.
AFFIRMED

. According to the original Petition, Amare E. Gebre is the owner of the property at 1544 Gentilly Boulevard. We therefore refer to him herein as Gebre, but note that throughout the record, he is also referred to as Gebre Amare.

. Plaintiffs also filed suit regarding damages suffered as a result of the City’s demolition of the building located at 1544 Gentilly Boulevard in New Orleans, and that lawsuit has been consolidated with the plaintiffs’ appeal of the BZA decision that the August 21, 2013 building permit was issued in error. However, the plaintiffs' suit regarding the allegedly wrongful demolition is still ongoing, and issues related to those claims are not before this Court in this appeal.

. CZO § 13.2.1 provides: “No nonconforming building ... which hereafter becomes and remains vacant for a continuous period of six (6) calendar months shall again be used except in conformity with the regulations of the district in which such building or land is situated.”

. While the motion for summary judgment itself was not transmitted to the Court with the record in this matter, the transcript of the hearing on the motion held in open court on March 14, 2014 was provided.

. At the end of the hearing, which disposed of both the summary judgment motion and the motion to strike, the district court requested that counsel submit a judgment. The judgment submitted and signed referenced only the summary judgment motion; however, the district court denied the motion to strike in open court as reflected in the provided record.

.The district court judgment references CZO § 13.13 but this is an obvious typographical error. There is no CZO § 13.13 and CZO § 13.3 addresses authorization and procedures for restoration permits for a building that had a legal nonconforming use before its destruction.

. While Appellants have not specifically reiterated their argument under La. C.C.P. art. 964 on appeal, which permits a court to strike from any pleading "any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter,” the Court notes that "[m]otions to strike are viewed with disfavor and are infrequently granted. It is disfavored because striking a portion of a pleading is a drastic remedy ... and is only proper if it can be shown that the allegations being challenged are so unrelated to a plaintiff's claims as to be unworthy of any consideration and that their presence in the pleading would be prejudicial to the moving party.” Carr v. Abel, 2010-835 (La.App. 5 Cir. 3/29/11), 64 So.3d 292, 296 writ denied, 2011-0860, p. 7 (La.6/3/11), 63 So.3d 1016(internal quotations and citations omitted).

. See supra, note 2.