| | | |
|---|---|---|
| **HEIRS OF LYDIA BERGERON, WIFE OF/AND SIDNEY J. SIMONEAUX LAND PARTNERSHIP, A LIMITED PARTNERSHIP** | * | **NO. 2023-CA-0212** |
| | * | **COURT OF APPEAL** |
| | * | **FOURTH CIRCUIT** |
| **VERSUS** | * | **STATE OF LOUISIANA** |
| **B-P AMOCO, AMERADA HESS CORPORATION, WM. T. BURTON INDUSTRIES, INC., BROCK EXPLORATION CORPORATION, MONGRUE OIL COMPANY, INC., NORTHWEST OIL COMPANY, LYNAL, INCORPORATED, QUINTANA PETROLEUM CORPORATION, QUINTANA PETROLEUM (U.S.), INC., ET AL.** | * * * * * * * | |

| | |
|---|---|
| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| HEIRS OF LYDIA BERGERON ET AL. | NO. 2023-C-0016 |
| VERSUS | |
| BP AMOCO ET AL. | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 1999-19530, DIVISION "B"
Honorable Richard G. Perque, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Michael G. Stag
Ashley M. Liuzza
Matthew D. Rogenes
STAG LIUZZA LLC
365 Canal Street
Suite 2850
New Orleans, LA 70130

Andrew A. Lemmon

LEMMON LAW FIRM, LLC
15068 River Road
Hahnville, LA 70057

COUNSEL FOR PLAINTIFF/APPELLANT

Robert B. McNeal
Kathryn Z. Gonski
Mark R. Deethardt
Jaclyn E. Hickman
Trinity A. Morale
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139

Hunter A. Chauvin
LISKOW & LEWIS
120 Camellia Blvd., Suite 300
Lafayette, LA 70508

Lauren C. Mastio
Carl D. Rosenblum
Taylor K. Wimberly
JONES WALKER LLP
201 St. Charles Avenue
Suite 5100
New Orleans, LA 70170-5100

Shawn A. Carter
Christopher B. Bailey
Matthew J. Randazzo, III
RANDAZZO GIGLIO & BAILEY LLC
900 E. Saint Mary Blvd.
Suite 200
Lafayette, LA 70503-2378

Michael R. Phillips
Annie Lemelin
Claire E. Juneau
KEAN MILLER, LLP
900 Poydras Street, Suite 3600
New Orleans, LA 70112


Charles Simon McCowan, III
L. Victor Gregoire, Jr.

KEAN MILLER, LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED;WRIT GRANTED; TRIAL COURT'S GRANT OF
PARTIAL EXCEPTION OF NO RIGHT OF ACTION IN FAVOR OF
CHEVRON AND WAGNER IS REVERSED**

**DECEMBER 20, 2023**

SCJ
TFL
RML

Appellants/relators, The Heirs of Lydia Bergeron, wife/of and Sidney Simoneaux Land Partnership, A Limited Partnership ("Bergeron Partnership") and Simoneaux Family Land, L.L.C. ("Simoneaux Company") (collectively, the "heirs") seek both supervisory and appellate review of the trial court's July 5, 2022 judgment granting an exception of no right of action as to three defendants—BP America Production Company ("BP"), Wagner Oil Company ("Wagner"), and Chevron USA, Inc. ("Chevron"). As to BP, the trial court's judgment dismissed all the heirs' claims against it; thus, the heirs filed an appeal, which all three defendants opposed. As to Wagner and Chevron, the heirs filed an application for supervisory writ. For the following reasons, we affirm in part and reverse in part the judgment of July 5, 2022, and remand the matter to the trial court for further proceedings. We grant the writ and reverse the trial court's grant of the partial exception of no right of action in favor of Wagner and Chevron.

1

## FACTUAL AND PROCEDURAL BACKGROUND

This matter has been pending since 1999, well over twenty years. Sidney Simoneaux and Lydia Bergeron owned property in St. Charles Parish and leased the property to various oil and gas companies. The companies conducted operations on the property resulting in surface and subsurface contamination.

Sidney Simoneaux and Lydia Bergeron had five children who inherited the property in equal shares when they passed away. The children formed the Bergeron Partnership in 1986 and converted their individual ownership interest in the property to an equal ownership interest in Bergeron Partnership.

On December 3, 1999, the Bergeron Partnership filed a petition for damages, and filed numerous supplemental and amending petitions. BP, Wagner, and Chevron were among the defendants named in the petitions.[1] In 2004, Simoneaux Company merged with the Bergeron Partnership and the Simoneaux Company was declared the surviving company. All members of the Bergeron Partnership and the Simoneaux Company are heirs of the original owners, Sidney Simoneaux and Lydia Bergeron.

On January 3, 2022, the heirs filed a seventh supplemental and amending petition.[2] The heirs averred that the oil companies improperly disposed of hazardous substances and concealed information of the contamination.

---

[1] The Bergeron Partnership's petitions named the following as defendants: Amoco Production Company; B.P. Amoco; Amerada Hess Corporation; WM. T. Burton Industries, Inc.; Brock Exploration Corporation; Mongrue Oil Company, Inc.; Northwest Oil Company; Lynal Incorporated; Quintana Petroleum Corporation; Quintana Petroleum (U.S.), Inc.; Cox Oil & Gas, Inc., Cox Louisiana Partnership; Cox Exploration; Marine Container Corporation; Texaco E&P, Inc.; Chevron U.S.A. Holding Inc., Chevron U.S.A. Inc., Cayenne, L.L.C.; Hilcorp Energy Company; Forman Petroleum Corporation; Noram Energy Corp.; Inexco Oil Company; LLOG Exploration & Production Company; Sandefer Petroleum Company; Birthright Exploration Limited; KCM Management, Inc.; River Oaks Exploration, Inc.; Liberty Oil and Gas Corporation; Texas Petroleum Investment Company; Pan America Petroleum Corporation; Amerada Petroleum Corporation; and Wagner Oil Company.

[2] As the trial court's judgment reflects, the parties stipulated that the seventh supplemental and amending petition superseded all prior petitions to the extent there are inconsistencies.

2

On February 11, 2022, Chevron filed exceptions to the petition for damages. Chevron indicated that its predecessor operated on the property between 1991 and 1992. Chevron cited the subsequent purchaser doctrine in support of its argument the heirs lacked a right of action.

Thereafter, on February 17, 2022, Wagner filed an exception of no right of action, asserting that the subsequent purchaser doctrine barred the heirs' claims.

On February 28, 2022, BP also filed an exception of no right of action. BP asserted that the heirs had no claims against it based on the subsequent purchaser doctrine because BP's predecessors ceased their activities on the property by 1968, which was prior to the heirs acquiring the property.

On May 26, 2022, the heirs filed an opposition to the defendants' exceptions. The heirs argued application of the subsequent purchaser doctrine to not-apparent damage is incorrect.

On June 3, 2022, the trial court held a hearing on the exceptions. The trial court indicated the transfer of property document mentioned a sale twice therein and determined the subsequent purchaser doctrine applied.

On July 5, 2022, the trial court issued the following judgment, in pertinent part:

> **IT IS FURTHER ORDERED AND DECREED** that BP's Peremptory Exception of No Right of Action is SUSTAINED and Plaintiffs' claims against BP are hereby **DISMISSED WITH PREJUDICE**;
>
> **IT IS FURTHER ORDERED AND DECREED** that Defendants CUSA and Wagner's Peremptory Exceptions of No Right of Action Under the Subsequent Purchaser Doctrine is **SUSTAINED IN PART and OVERRULED IN PART**. Defendants CUSA and Wagner's Peremptory Exceptions of No Right of Action Under Subsequent Purchaser Doctrine are **SUSTAINED** as to Plaintiffs' claims resulting from any activities or operations which occurred prior to June 20, 1986, the date on which Heirs of Lydia Bergeron, Wife

3

of/and Sydney Simoneaux Land Partnership, a Limited Partnership acquired the property at issue in this case ("Property"). All claims arising prior to June 20, 1986 are hereby **DISMISSED WITH PREJUDICE.** Defendants CUSA and Wagner's Peremptory Exceptions of No Right of Action Under the Subsequent Purchaser Doctrine are **OVERRULED** as to Plaintiffs' claims arising on or after June 20, 1986;

**IT IS FURTHER ORDERED AND DECREED** that Defendants' Peremptory Exceptions of No Right of Action Under the Louisiana Mineral Code and mineral leases is **SUSTAINED** and all claims arising out of the Louisiana Mineral Code and all claims arising out of the mineral leases (Count 9: Louisiana Civil Code Contractual/Lease Liability; Count 10: Louisiana Civil Code Article 1994 Contract Liability; Count 11: Mineral Code Article 11 Liability; Count 12: Mineral Code Article 22 Liability; Count 13: Contract Mineral Code Liability of the Seventh Supplemental and Amending Petition for Damages) are hereby **DISMISSED WITH PREJUDICE**

On August 31, 2022, the heirs filed a motion for new trial as to the dismissal of all claims against BP. Thereafter, on September 26, 2022, the heirs filed a notice of intent to apply for supervisory writ as to the trial court's grant of partial exception of no right of action in favor of Chevron and Wagner. The heirs timely filed the writ application.

On November 18, 2022, the trial court denied the heirs' motion for new trial. On January 16, 2023, the heirs filed a petition for devolutive appeal. The appeal was lodged with this Court on March 23, 2023. On April 3, 2023, the writ application was consolidated with this appeal as the grounds for supervisory review and the devolutive appeal are identical.

## DISCUSSION

**The Appeal**

In the appeal, the heirs contend that the trial court erred in applying the subsequent purchaser doctrine to the non-sale transfer of a family property from individual heirs to a family held land partnership to sustain BP's no right of action,

4

and dismissing all claims against BP with prejudice. The heirs further argue that the trial court erred in striking their claims arising under the Louisiana Environmental Quality Act ("LEQA").[3]

Appellate courts review a trial court's ruling on an exception of no right of action *de novo*. *Hamp's Constr., L.L.C. v. 1031 Canal, L.L.C.*, 2020-0182, p.6 (La. App. 4 Cir. 12/9/20), 312 So.3d 299, 303-04. The function of the exception of no right of action is to test whether the claimant belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *Hamp's Constr., L.L.C.*, 2020-0182, p.7, 312 So.3d at 304. Only a person having a real and actual interest may bring an action. La. C.C.P. art. 681. The exceptor bears the burden of proof. *Hamp's Constr., L.L.C.*, p.7, 312 So.3d at 304. The parties may introduce evidence to support or controvert the exception of no right of action. La. C.C.P. art. 931. In *Hamp's Constr., L.L.C.*, this Court further noted:

> 'Evidence may be received under the exception of no right of action for the purpose of showing that the plaintiff does not possess the right he claims or that the right does not exist.' *Teachers' Ret. Sys. of La. v. La. State Emp.'s Ret. Sys.*, 456 So.2d 594, 597 (La. 1984). Additionally, in determining whether to sustain an exception of no right of action, 'a court should focus on whether the particular plaintiff has a right to bring the suit while assuming that the petition states a valid cause of action for some person.'

*Id.*, p.7, 312 So.3d at 304 (internal quotations omitted).

---

[3] The heirs list four assignments of error: 1) the trial court erred by finding the June 20, 1986 transfer of the property from the heirs to the family land partnership without any purchase price to be a sale; 2) the trial court erred in applying the subsequent purchaser doctrine to the non-sale, non-arm's length transfer of a family property from individual heirs to a family held land partnership to sustain exceptions of no right of action; 3) the trial court erred in striking all claims arising under the Louisiana Environmental Quality Act as not properly brought before the court on its own motion when the defendants failed to answer the petitions; and 4) the trial court erred in apply the subsequent purchaser doctoring to a property with latent damages to sustain exceptions of no right of action.

5

*Subsequent Purchaser Doctrine*

In its exception of no right of action, BP asserted that the heirs had no claims against it based on the subsequent purchaser doctrine. BP argued that its predecessors ceased their activities on the property by 1968, which was prior to the heirs acquiring the property.

In *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, p.20 (La. 10/25/11), 79 So.3d 246, 264, the Supreme Court acknowledged that when property is damaged through the fault of another, the owner of the property obtains a personal right to demand the tortfeasor repair the damage. The Supreme Court acknowledged the "subsequent purchaser doctrine" as:

> a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe*, p.8, 79 So.3d at 256–257.

In *Eagle Pipe*, the plaintiff purchased property and years later discovered the land was contaminated with radioactive material. *Id.*, p.1, 79 So.3d at 252. The plaintiff filed suit against the former owner/seller and the oil and trucking companies allegedly responsible for the radioactive material. *Id.* The trial court granted the exception of no right of action filed by the oil and trucking companies. *Id.* This Court reversed. The Supreme Court reversed this Court and reinstated the trial court's ruling. *Id.*, p.2, 79 So.3d at 252.

After reviewing the jurisprudence giving rise to the rule, the Supreme Court stated "we think the rationale also extends to the situation where the damage to property is not apparent." *Id.*, p.37, 79 So.3d at 275. The Supreme Court determined

"the law has provided to Eagle Pipe a cause of action in redhibition and the right to sue for rescission of the sale or the reduction of the purchase price." *Id.*, p.51, 79 So.3d at 283. The Supreme Court noted the legislature provided a contractual remedy and a remediation remedy to Eagle Pipe. *Id.*, p.51, 79 So.3d at 284. The Supreme Court averred the legislature was not required to provide every possible remedy to Eagle Pipe.

In the present matter, the heirs contend the transfer of property at issue herein does not meet the requirements of a sale. The heirs rely on La. C.C. art. 2439. That Article provides: "[s]ale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale." La. C.C. art. 2439. The heirs aver the transfer of property did not contain a price in money. In support of the argument a document lacking a price in money is not a sale, the heirs cite *Pulford v. Dimmick*, 31 So. 879 (La. 1902). Therein, the Supreme Court observed:

> While the validity of a sale does not depend on a price being fixed with certainty in the act, it does depend on a certain price being agreed upon by the parties or left to the arbitration of a third person who fixes it. *Walker v. Fort*, 3 La. 535 [(La. 1832)]. And a transfer in writing of real estate, if attacked, must be held null as a sale if it is not shown that it is made for a price that was fixed and agreed upon. So, too, a fixed price is of the essence of the contract of *dation en paiement*.

*Pulford*, 31 So. at 880.

In this instance, the transfer of property contained the word "sale." Nonetheless, the transfer of property from the individual heirs to the partnership lacked a fixed price. The transfer of property did not involve the transfer of ownership for a price in money. We find that the transfer of property does not meet the legal definition of a sale.

7

Notably, in their exceptions, the defendants cited *Louisiana Wetlands, L.L.C. v. Energen Res. Corp.*, 2021-0290 (La. App. 1 Cir. 10/4/21), 330 So.3d 674. Therein, individual owners transferred their interest in immovable property to a newly created limited liability company (LLC) in exchange for membership interests in the LLC. *Louisiana Wetlands, L.L.C.*, 2021-0290, p.3, 330 So.3d at 676-77. Later, the LLC sued for non-apparent damages caused by historical oil and gas operations on the property. *Id.*, p.4, 330 So.3d at 677. Citing *Eagle Pipe*, the First Circuit determined the right to sue for damages to property is a personal right that is not transferred to a subsequent owner unless explicitly transferred to the new owner. *Id.*, p.7, 330 So.3d at 679.

The Supreme Court denied writs in *Louisiana Wetlands*. *Louisiana Wetlands, L.L.C. v. Energen Res. Corp.*, 2021-01610 (La. 1/12/22), 330 So.3d 614 and *reconsideration not considered*, 2021-01610 (La. 3/22/22), 334 So.3d 751.[4] However, Justice Genovese dissented from the denial of the writ, observing:

> This was a non-arm's-length transaction involving the same parties, who maintained the same ownership interest, and who assigned all of their rights, title, and interest in and to the same property to its own LLC. There was no sale-just a transfer by the same people to a legal entity. I find the "subsequent purchaser rule" does not apply, and the LLC has a right of action for property damages it sustained. As a result, I would grant the writ and reverse the lower courts' grant of summary judgment in favor of Defendants which dismissed the LLC's claims.

*Louisiana Wetlands*. *Louisiana Wetlands, L.L.C.,* 2021-01610, p.1, 330 So.3d 614.

Significantly, unlike the plaintiff in *Eagle Pipe*, the law has not provided to the heirs a cause of action in redhibition and the right to sue for rescission of the sale or the reduction of the purchase price in this instance. The availability of other

---

[4] The jurisprudence has long noted the "denial of a writ application is of no precedential value, regardless of the reasons assigned." *Nabors Offshore Corp. v. Caterpillar Inc.*, 2016-0003, p.5 (La. App. 4 Cir. 11/30/16), 204 So.3d 1068, 1071.

remedies provided to a subsequent purchaser as described by the Supreme Court in *Eagle Pipe* does not apply to a transfer from individual heirs to a partnership when the individual heirs receive shares in the partnership and not money.

Such a result is supported by *Pierce v. Atl. Richfield Co.*, 2014-1233, p.1 (La. 3/17/15), 166 So.3d 996, 997. Therein, the Supreme Court indicated in a *per curiam*:

> Because *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, 2010-2275, 2010-2279, 2010-2289 (La. 10/25/11), 79 So.3d 246, addressed subsequent purchaser rights following a sale, which are distinguishable from the rights acquired through a succession transfer, we find *Eagle Pipe* is not dispositive of the exceptions of no right of action filed by the defendants in this case. Accordingly, the lower court judgments are reversed, and the case is remanded to the district court for further proceedings.

*Pierce*, 2014-1233, p.1, 166 So.3d at 997.

As indicated earlier, the rights acquired by a subsequent purchaser are distinguishable from the rights acquired through the transfer of property from individual owners to a partnership in exchange for a partnership interest as occurred herein. The rights are distinguishable as the law does not provide to the heirs a cause of action in redhibition and the right to sue for rescission of the sale or the reduction of the purchase price as there was no sale of the property. In *Eagle Pipe*, the Supreme Court noted the rights acquired by the subsequent purchaser (the plaintiff) included a cause of action in redhibition and the right to sue for rescission of the sale or the reduction of the purchase price as there was a sale of the property. *Eagle Pipe*, p.51, 79 So.3d at 283.

Here, the transfer of property document meets the definition of an exchange as averred by the heirs. In support of their argument, the heirs relied on *In re Skipper*, 19-30753, 2021 WL 2069930 (Bankr. W.D. La. May 21, 2021). Therein, the naked owners and the usufructuary transferred their interest in farmland to a newly created

limited liability company ("LLC") in exchange for membership interests in the newly created LLC. *In re Skipper*, 19-30753, 2021 WL 2069930 *3. The bankruptcy court determined the transfer was valid as an exchange pursuant to La. C.C. art. 2660. *Id.* That Article provision defines an "exchange" as "a contract whereby each party transfers to the other the ownership of a thing other than money." La. C.C. art. 2660. A transaction is a sale when the "thing" given by one party is money. La. C.C. art. 2660, Official Revision Comments, Comment (c). The individual owners of the property did not give or receive money for their interests in the property – they received interests in the LLC. *In re Skipper*, 2021 WL 2069930 *3.

Similar to the owners of the immovable property in *Skipper*, the heirs are individual owners of the immovable property and exchanged their ownership interests for interests in the partnership, a thing other than money. We find the transfer of property was an exchange and not a sale. Therefore, the trial court erred in determining the subsequent purchaser doctrine applied to the exchange of property herein, and the trial court erred in sustaining BP's exception of no right of action.

*Motion to Strike*

Next, the heirs argue that the trial court, on its own motion, erred in striking all claims arising under the LEQA from their seventh supplemental and amending petition. The heirs argue that they did not have the opportunity to address the trial court's concerns in briefing because the issue was raised without prior notice at the June 3, 2022 hearing.

La. C.C.P. art. 964 governs motions to strike. The article provides "[t]he court on motion of a party or on its own motion may at any time and after a hearing order

10

stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter." La. C.C.P. art. 964.

"We review the trial court's ruling on a motion to strike under an abuse of discretion standard." *Tran v. Collins*, 2020-0246, p.5 (La. App. 4 Cir. 8/20/21), 326 So. 3d 1274, 1279, *writ not considered*, 2021-01570 (La. 1/12/22), 330 So. 3d 619 (citing *In re Med. Review Panel of Williams v. EMSA La., Inc.*, 2015-1178, p.6 (La. App. 4 Cir. 10/21/16), 203 So.3d 419, 425). The abuse of discretion standard is highly deferential to the trial court unless the court exercised its discretion based upon an erroneous view of the law or a clearly erroneous view of the facts. *Id.*, p.5, 326 So.3d at 1279 (citing *Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 2014-0843, p. 2 (La. App. 4 Cir. 12/17/14), 156 So.3d 1234, 1237.

"Motions to strike are viewed with disfavor and are infrequently granted. It is disfavored because striking a portion of a pleading is a drastic remedy ... and is only proper if it can be shown that the allegations being challenged are so unrelated to a plaintiff's claims as to be unworthy of any consideration and that their presence in the pleading would be prejudicial to the moving party." *Gebre v. City of New Orleans*, 2014-0904, pp. 11-12 (La. App. 4 Cir. 10/7/15), 177 So. 3d 723, 733, n.7 (citing *Carr v. Abel*, 2010-835 (La. App. 5 Cir. 3/29/11), 64 So. 3d 292, 296). However, "[a] motion to strike is only proper if it can be shown that the allegations being challenged are so unrelated to a plaintiff's claims as to be unworthy of any consideration and that their presence in the pleading would be prejudicial to the moving party." *Carr*, 2010-835, pp.7-8, 64 So. 3d at 296.

11

Here, the record provides that the heirs brought a claim under LEQA for the first time in their seventh supplemental and amending petition. During the June 3, 2022 hearing, the trial court found that the LEQA claim was not properly before the court because the heirs did not request leave to amend the petition.

A petition may be amended without leave of court at any time before the answer thereto is served. La. C.C. art. 1151. The record reveals that BP filed two answers in this matter. It further reveals that the heirs did not seek leave of court to amend the petition. Therefore, we find that the trial court did not abuse its discretion in striking the LEQA claim from the seventh supplemental and amending petition.

**Application for Supervisory Writ**

In their supervisory writ application, the heirs assert the same argument as they did in the appeal. The heirs contend that the trial court erred in granting in part the exceptions no right of action based on the subsequent purchaser doctrine and dismissing all claims against Chevron and Wagner arising prior to June 20, 1986.

The trial court partially sustained the exception of no right of action filed by Chevron and Wagner. In *Parker v. Paladin Contractors, L.L.C.*, 2020-0492, p.11 (La. App. 4 Cir. 3/3/21), 314 So.3d 1128, 1137, this Court indicated the jurisprudence has generally recognized that a partial exception of no right of action is procedurally improper when the partial exception attacks only one theory of recovery based on a single set of facts or a single occurrence and which does not result in a party's dismissal.

In this instance, the partial exception attacked a theory of recovery based on a single occurrence and did not result in the dismissal of Wagner and Chevron. We find that the trial court erred in granting the partial exception of no right of action as to Chevron and Wagner.

12

Next, we address the trial court's application of the subsequent purchaser doctrine to Chevron's and Wagner's exceptions of no right of action.

In support of its exception, Chevron indicated that the individual owners did not explicitly transfer their personal right to sue for pre-acquisition damages to the property in the act transferring the property to the Bergeron Partnership. Further, Chevron averred the Bergeron Partnership did not transfer any personal right to sue for pre-acquisition damages to the property in the merger documents with Simoneaux Company. Chevron argued that the Bergeron Partnership and Simoneaux Company's certificate of merger lacks a transfer of a personal right to sue for property damage.

Chevron attached to its exception the 1986 transfer of property from the individual owners to the Bergeron Partnership. The transfer of property provided the named heirs "grant, bargain, sell, convey, transfer, assign, set-over, abandon and deliver, together with all legal warranties and with full substitution and subrogation in and to all rights and actions in warranty" regarding the property to the Bergeron Partnership. The transfer of property later declared "[t]his sale and conveyance is made solely and in consideration of the receipt by each Vendor of an interest in the [Bergeron] Partnership proportionate to his or her undivided interest in the land conveyed herein." The transfer of property noted the ownership of the minerals was not included in the transfer.

Wagner indicated in its exception of no right of action that it began operations on the property in 2013. Wagner further adopted Chevron's arguments in its exception.

In opposition to the exceptions, the heirs contended the Supreme Court did not allow the expansion of the subsequent purchaser doctrine to include rights

13

acquired through a succession transfer. The heirs averred they asserted causes of action arising under mineral leases and obligations arising out of the Mineral Code and that the Supreme Court did not hold the subsequent purchaser doctrine applied to such causes of action. Similarly, the heirs contended they asserted a cause of action for remediation under the Louisiana Environmental Quality Act and that the doctrine does not apply to such a claim.

As previously discussed herein, the subsequent purchaser doctrine applies to sales of property. But, the individual owners did not sell the property in 1986. Rather, they transferred their ownership to the Bergeron Partnership in exchange for membership interests therein. Accordingly, the trial court erred in partially sustaining the exceptions of no right of action filed by Chevron and Wagner. Accordingly, the writ application is granted; and the trial court's grant of partial exception of no right of action in favor of Chevron and Wagner is reversed.

## CONCLUSION

For the above and foregoing reasons, we affirm the portion of the July 5, 2022 judgment striking the LEQA claims from the seventh supplemental and amending petition, reverse the portion of the July 5, 2022 judgment sustaining the exceptions of no right of action, and remand the matter to the trial court for further proceedings consistent with this opinion. We grant the writ application, and we reverse the trial court's grant of partial exception of no right of action in favor of Chevron and Wagner.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED;WRIT GRANTED; TRIAL COURT'S GRANT OF PARTIAL EXCEPTION OF NO RIGHT OF ACTION IN FAVOR OF CHEVRON AND WAGNER IS REVERSED**

14